### In re Thomas RAIKES, Debtor.

### Bankruptcy No. 82–00807.

United States Bankruptcy Court,
D. New Jersey.

Aug. 26, 1982.

David P. Daniels, Camden, N. J., for debtor.

Robert M. Wood, Red Bank, N. J., Standing Chapter 13 Trustee.

Howard P. Schiff and Daniel C. Schiff by Daniel C. Schiff, Paul R. Edinger (on the brief), West Long Branch, N. J., for Finance One of New Jersey, Unsecured creditor.

## OPINION

WILLIAM LIPKIN, Bankruptcy Judge.

The Debtor herein, Thomas Raikes, filed a Petition on February 10, 1982 under the provisions of Chapter 13 of the Bankruptcy Code, Adjustment of Debts of an Individual with Regular Income. The Debtor proposed paying $80.00 a month for a period of 58 months to the Standing Trustee, which would be applied by him in satisfaction of the arrears on two mortgages on the Debtor's home plus administration expenses.

The Plan was modified whereby the Debtor proposed paying $86.21 per month for 58 months. A hearing on confirmation of the Plan was scheduled for April 29, 1982. The Plan was further modified to provide for monthly payments of $88.03. The payment of such sum was arrived at by the Debtor based upon his income of $1,223.00 per month less expenses of $1,126.00, leaving a net sum of $97.00 from which he would pay the Trustee $88.03.

The Debtor listed as his creditors Bankers Mortgage Co., the holder of a first mortgage on his home, 215 Ashland Avenue, Cherry Hill, New Jersey, in the sum of $33,900, and First Peoples Bank, the holder of a second mortgage on his home of $4,591.95, a total of $38,491.95. The current monthly payments thereon were scheduled in the sum of $328.00 and $139.15 respectively, a total of $467.15. In addition, the Debtor listed Finance One of N. J., Inc. as an unsecured creditor in the sum of $1,135.52.

The Debtor's Plan proposed payment only to cure the arrears on the two mortgages and Finance One objected to confirmation of the Plan, because it did not provide for payment to unsecured creditors.

At the hearing on the Plan on April 29, 1982 the following facts were revealed:

In addition to the income and budget expenditures set forth above whereby the Debtor had $97.00 left after payment of the current mortgage payments, and for food, transportation, etc., the Debtor was faced with payment of arrears on the first mortgage in the sum of $4,950.81. He proposed that the second mortgage be "crammed down" to be an unsecured debt because it arose out of refinancing of past debts and the property was not valued in excess of the first mortgage stated to be $38,492.00. The value of his home was listed at $37,000.00.

First Finance took issue with the stated amount of income and the budgetary items of the Debtor and I, therefore, adjourned the matter to enable First Finance to submit interrogatories to the Debtor as to such income and disbursements. On the Adjourned trial date of August 4, 1982 it was revealed that the attorney for Finance One had been furnished information relating to the Debtor's weekly income through pay stubs and he had opportunity to question the Debtor's expenditures.

The pay stubs of the Debtor revealed that his income would be approximately $1,340.00 a month or an excess of $117.00 over expenditures instead of $97.00 excess, or $20.00 more per month. However, his pay stubs ranged between $199.11 and $242.00 per week for the period June to August, 1982. Finance One could not establish any "fat" in the Debtor's budget.

The Debtor has been employed as a shipper for 8 years by his present employer. There was not a scintilla of evidence to indicate that the Debtor was apt to obtain employment that would call for a higher paying job, nor was there any proof to indicate that his budget would decrease.

The Plan proposed by the Debtor enabled him to retain title to his home by making the regular monthly payments to the two mortgagees, which total $467.15 plus money for current living expenses and $88.03 a month on his mortgage arrears over a period of 57½ months.

It must be noted that the first mortgagee is not receiving interest during this period of time on the debt in arrears because if it was permitted to foreclose on its mortgage it would not realize more than the amount due it by sale of the property. The Debtor is making his regular monthly payments outside the Plan, which includes interest.

The creditor, Finance One, seeks to have this court declare that a "zero" payment plan to unsecured creditors is prohibited by such an interpretation of the Code or that a Plan, to be considered as having been filed in good faith, must provide for payment to unsecured creditors.

The pertinent sections of Chapter 13 dealing with rights of debtors and creditors are:

1303. Rights and powers of debtor.

1304. Debtor engaged in business.

1322. Contents of plan.

(a) The plan shall—

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

. . . .

(b)(2) modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

(3) provide for the curing or waiving of any default;

. . . .

1322(c) The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

Of particular relevance are the provisions in Section 1325 dealing with "Confirmation of plan," which provides "(a) The court shall confirm a plan if—"

. . . .

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of cash allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date

. . . .

(5)(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

. . . .

(6) the debtor will be able to make all payments under the plan and to comply with the plan

Congress further recognized that the "best laid schemes of mice and men gang aft a-gley" [1] wherein it provided in Section 1328,

(b) At any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if—

(1) the debtor's failure to complete such payments is due to circumstances

1. Robert Burns, November 1785.

> But mousee, thou are no thy lane
>> In proving foresight may be vain;
>> The best laid schemes O' mice an' men
>>> gang aft a-gley

> An' lea'e us nought but grief an' pain
> for promised joy.

for which the debtor should not justly be held accountable;

(2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

(3) modification of the plan under section 1329 of this title is not practicable. (underlining added)

The cases relied upon by the creditor's attorney go to the question of the good faith requirement of section 1325(a)(3) wherein some courts indicate a payment is required to be made to unsecured creditors before a plan may be confirmed.

The interpretation of "good faith" sought to be applied by Finance One would require a payment to unsecured creditors in all cases as the "sine qua non" before a plan could be confirmed and disregards the other sections of Chapter 13. Its contention is as one-sided as would be a "zero payment plan" of a debtor who has a future potential source of income to make payment out of wages or from property certain to vest in such debtor.[2]

Congress recognized that if a creditor could realize payment of some amount from assets of the debtor, then to that extent the plan could not be confirmed unless the creditor could realize an equivalent amount under the plan. 11 U.S.C. section 1325(a)(4). Congress further, as set forth above, expressed a limitation of three years within which the debtor should be saddled with payments and for cause payments could be extended up to five years. 11 U.S.C. Section 1322(c).

As set forth above, 11 U.S.C. Sections 1303 and 1304, a debtor is given the rights of a trustee. A trustee has the right to liquidate assets for the best obtainable price and make distribution among the creditors in the order of priority set forth in the Code, 11 U.S.C. § 507, and as allowable under 11 U.S.C. Section 502. The provisions of such sections are applicable to Chapter 13 proceedings. That limitation or right of payment is a factor in determining whether the debtor is treating with the creditors fairly in the plan. That factor would bear upon good faith of the debtor in proposing a plan.

The factor of possible "cram down" is recognized as available to a debtor in Chapter 13 (11 U.S.C. 1322(b)), set forth above, as against secured creditors, except a mortgagee on the debtor's principal residence, and of holders of unsecured claims, whereby the right of payment is modified.

The provision in Section 1322(a)(1) recognizes that a debtor cannot rely entirely upon his present earnings or income as the measure of payment to be made by the plan. As set forth above, the contents of the plan should "provide for submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan."

The creditor in this case would have the court disregard all other facts surrounding the debtor's financial present and future outlook and refuse to confirm a plan if it does not provide a substantial payment to unsecured creditors. The non-payment of any sum to creditors would be conclusive proof of lack of good faith by the debtor in proposing a plan. I do not subscribe to that philosophy.[3] The creditor, Finance One in this case, would compel the debtor to con-

---

**2.** For example, this court had occasion to pass upon the issue of "good faith", where two debtors had professional training and, therefore, the potential for a higher future income. They had no assets and owed approximately $40,000. in educational loans. They proposed paying 8% on their debts over 3 years. This court held that the plan did not demonstrate "good faith" because the debtors had the potential for a

large future income. Thereafter the debtors filed a plan providing for payment of 60% of their debts, which allowed for their expenses, and was confirmed by this court. The modified plan demonstrated "good faith".

**3.** I am familiar with cases in other jurisdictions that indicate "zero payment" plans to unsecured creditors are not to be confirmed.

vert the proceedings to one of straight bankruptcy under the provisions of Chapter 7. That would result in granting a trustee title to the real estate, which is not worth more than the mortgages thereon. The trustee would abandon his interest or at best sell it and pay off the mortgagees. Finance One would receive no benefit from the sale or abandonment of the property and its claim would be discharged. Furthermore, should a debtor file under Chapter 7 the court may not order a case to be converted to Chapter 13 whereby creditors can be paid under a plan. See 11 U.S.C. Section 706.[4] The debtor is the only one who may convert a Chapter 7 case to a Chapter 13 case, 11 U.S.C. § 706(a), or the debtor may convert a case under Chapter 13 to a case under Chapter 7, 11 U.S.C. § 1307(a). This court cannot compel a debtor to continue the estate or file under the provisions of Chapter 13 whereby creditors would possibly be paid some sum of money on their debts as it would smack of a violation of the 13th Amendment to the United States Constitution.[5]

■ I do not construe the intent and meaning of the "good faith" requirement of Section 1325(a)(3) to require in all cases that the debtor's plan include a payment to unsecured creditors. Each case must be reviewed and evaluated on its own facts, with due consideration to be given to the assets available for the benefit of creditors, in the event of liquidation, and the source and extent of the debtor's income less necessary current living costs, after allowance for exemptions under the provisions of Section 522.[6]

In the case now before me I adjourned the hearing on confirmation to afford the creditor, Finance One, an opportunity to fully inquire into the debtor's income and budget and any other assets he may have. The creditor served interrogatories on the debtor and questioned him in court at the adjourned hearing. The facts set forth by the debtor in his petition and as elicited at the hearing were not in any material degree different, all to the effect that his plan was the best plan 'for payment consistent with such facts. The debtor had to make payment for almost the entire maximum period of 5 years permitted by the Bankruptcy Code in order to pay off the arrears which had accumulated on the mortgage. He could not make payments over 36 months to pay off his arrears as his income did not permit a larger monthly payment. The debtor is a working man, employed as a shipper for the same employer for the past 8 years. There was no proof to show that his position or job would change whereby his income would be increased. There was no proof that he would be qualified to work in an activity that would carry with it a larger salary nor was there proof to show that he would come into any property whereby he could pay his creditors. The home in which he resided would be lost to him if I dismissed the petition or he converted to Chapter 7, liquidation. In such event the unsecured creditors would not benefit to any degree whatsoever and their debts would have been discharged.

■ The creditor in this case was given full opportunity to attack the debtor's plan on the ground of bad faith. No such conclusion can be drawn from the facts presented by the debtor which were checked out by the creditor, Finance One. The court should, and did so in this case, determine on a case by case basis, whether the debtor has filed his plan in good faith. Where the debtor cannot make payment to

---

**4.** 11 U.S.C. § 706(c). "The court may not convert a case under this chapter to a case under chapter 13 of this title unless the debtor requests such conversion."

**5.** "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."

**6.** I have not touched upon exemptions which are available to debtors under the provisions of Section 522, whereby the assets of debtors are free of claims by the unsecured creditors and even judgment creditors and non-possessory, non-purchase secured creditors. 11 U.S.C. Section 522(f).

unsecured creditors or must resort to "cram down" of secured claims as permitted by the Bankruptcy Code the plan can still be confirmed if it enables the debtor to get a new start in life, and enables him to have a roof over his head and provides for payment to creditors at least in such sums as they would have been paid under the provisions of Chapter 7 of the Bankruptcy Code.

I find from the facts before me that the debtor in this case has satisfied all the requirements of Section 1325 of Chapter 13, which sets forth when the court shall confirm a plan.

For the foregoing findings of fact and conclusions of law the plan of the debtor is confirmed.