**In the Matter of Frank V. and Lois J. PONTERI, Janice M. Dausuel a/k/a Janice M. Brodie a/k/a Janice Brodie Dausuel, Debtors.**

**Bankruptcy Nos. 82–05790, 82–07868.**

United States Bankruptcy Court,
D. New Jersey.

July 20, 1983.

Peter A. Levin, P.A. by Howard K. Rotblat, Haddonfield, N.J., for debtors Ponteri.

Derek C. Scott, Camden, N.J., for debtor Dausuel-Brodie.

Robert M. Wood, Red Bank, N.J., trustee.

## OPINION

WILLIAM LIPKIN, Bankruptcy Judge.

The two above named Estates, Frank V. and Lois J. Ponteri, 82–05790, and Janice Brodie, a/k/a Janice Dausuel, 82–07868, arise out of Petitions filed by the respective parties under the provisions of Chapter 13 of the Bankruptcy Code. The issue raised by the filing of these two, otherwise unrelated, petitions under Chapter 13 of the Bankruptcy Code, is the viability of a Chapter 13 Petition and plan filed within six years after the same debtor(s) had filed a Petition under Chapter 7 of the Bankruptcy Code and been discharged of their debts.

In the Ponteri case, the husband and wife had each filed a Voluntary Chapter VII Petition under the Bankruptcy Act on December 12, 1977 in Pennsylvania. Discharges were granted to both of them on October 4, 1979. It is not clear whether any distribution to creditors resulted. These debtors filed a joint, voluntary Petition under Chapter 13 of the Bankruptcy Code on August 24, 1982. None of the claims of creditors listed in the Chapter 13 Petition existed in any form at the time of the debtors' discharge in 1979 under the Bankruptcy Act.

The Ponteris' present Chapter 13 Petition lists 9 unsecured creditors whose total claims equal $61,374.00. Apparently, many of these claims arise from the corporate obligations of Ponteri Construction Company, Inc., of which the husband debtor was President. The husband was also a guarantor for many corporate obligations. The debtors have no secured debts; they own no real estate, and all their personal property is claimed as exempt under § 522(d) of the Code. The debtors modified plan under Chapter 13 calls for monthly payments of $250.00 per month for 36 months, allowing for distribution of $8,100.00 to all unsecured creditors, which is approximately 13% of their scheduled unsecured debts.

Janice Brodie, a/k/a Janice Dausuel originally filed a Petition under Chapter 7 of the Bankruptcy Code on February 18, 1981, and was granted a discharge on July 10, 1981. That proceeding was a no-asset case in which unsecured debts totalling $5,255.96 were discharged. The debtor owned real estate at the time the Chapter 7 Petition was filed, and she was able to retain her equity in the property through her exemption although she was in default on her

mortgage obligation. The debtor filed the present Petition under Chapter 13 of the Code on November 12, 1982, at which time she was almost one year in default on the mortgage payments for her residence. The only creditors listed on her present Petition are the first mortgagee, Howard Savings Bank, and Public Service Electric and Gas Company, for utility service in the amount of $379.74. The debtor proposes to pay the sum of $76.00 per month for 60 months which will cure all arrears on the mortgage, plus interest, and will pay 100% to the unsecured creditor, without interest.

Both debtors argue that their Chapter 13 Plans should be confirmed as meeting the requirements set forth in § 1325 of the Code. The only doubtful requirement is whether "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). Once the plan has been confirmed, and if all payments are made, a discharge under § 1328 of the Code follows as a matter of course. There is no clearly articulated prohibition in Chapter 13 against the successive filing of Chapter 13 Petitions within any time limit of the filing of any other Petition under the Bankruptcy Code.

However, an analogy can be drawn to Section 727 of the Code, which provides in part:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(8) the debtor has been granted a discharge under this section, under section 1141 of this title, or under section 14,-371 or 476 of the Bankruptcy Act, in a case commenced within six years before the date of the filing of the petition;

(9) the debtor has been granted a discharge under section 1328 of this title, or under section 660 or 661 of the Bankruptcy Act, in a case commenced within six years before the date of the filing of the petition, unless payments under the plan in such case totaled at least—

(A) 100 percent of the allowed unsecured claims in such case; or

(B)(i) 70 percent of such claims; and

(ii) the plan was proposed by the debtor in good faith, and was the debtor's best effort;

The legislative history to this section indicates that Congress may have intended the statute limiting discharge to be more expansive than it actually is. The legislative history provides:

Finally, if the debtor has been granted a discharge in a case commenced within six years preceding the present bankruptcy case, he is denied discharge. This provision, which is no change from current law with respect to straight bankruptcy, is the six-year bar to discharge. Under present law, but not under this bill, confirmation of a composition wage earner plan under chapter XIII is a basis for invoking the six-year bar.

[House Report No. 95–595, 95th Cong., 1st Sess. 384–385 (1977).]

The eighth ground for denial of discharge is derived from section 14c(5) of the Bankruptcy Act. If the debtor has been granted a discharge in a case commenced within six years preceding the present bankruptcy case, he is denied discharge. This provision, which is no change from current law with respect to straight bankruptcy, is the six-year bar to discharge. Discharge under chapter 11 will bar a discharge for six years. As under current law, confirmation of a composition wage earner plan under chapter 13 is a basis for invoking the six-year bar.

The ninth ground is approval by the court of a waiver of discharge.

[Senate Report No. 95–989, 95th Cong., 2d Sess. 98–99 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 5885, 6341.]

This analysis demonstrates that Congress may have intended to prohibit a discharge under any chapter of Title 11 within 6 years of any Title 11 discharge. Nothing in Title 11 specifically allows the filing of a Chapter 13 Petition within a short time after discharge under Chapter 7.

■ Without a specific statute governing the present issue, there is a necessity for interpretation. It is axiomatic that an evaluation of the "good faith" requirement under § 1325(a)(3) of the Code requires the court to examine all aspects of the debtor's circumstances. *In Re Rimgale,* 669 F.2d 426 (7th Cir.1982); *In Re Raikes,* 22 B.R. 837 (Bkrtcy.N.J.1982), reversed in part and remanded. This court is aware of decisions in other jurisdictions, which attempt to set forth guidelines as to when or if a Chapter 13 Petition can be filed and completed, with a discharge granted, within 6 years of the filing of a Chapter 7 Petition. See *In Re Tauscher,* 26 B.R. 99, 9 B.C.D. 1425 (Bkrtcy. E.D.Wis.1982), where the court held that a Chapter 13 Petition could be filed prior to the closing of the Chapter 7 case and his extreme personal and financial circumstances did not demonstrate a lack of good faith by filing these chapters within 2 years, even though debts which were non-dischargeable in the Chapter 7 case would only be paid at 7% of the total under the Chapter 13 plan; *In Re Ciotta,* 4 B.R. 253, 6 B.C.D. 346 (Bkrtcy.E.D.N.Y.1980), where the court held that the 6-year bar under Section 727(a) did not apply to cases filed under Chapter 13 of the Code; *In Re Bonder,* 3 B.R. 623, 6 B.C.D. 257 (Bkrtcy.E.D.N. Y.1980), in which the court held that § 727(a)(8), barring a discharge within 6 years of a discharge in a prior case, is not applicable to cases under Chapter 13 of the Code; *In Re Bixby,* 10 B.R. 456 (Bkrtcy. Kan.1981), where the court held that the six-year ban against successive discharges did not apply to a Chapter 13 case in which the first discharge was granted under Chapter VII of the Bankruptcy Act, and the debtors proposed payments to unsecured creditors representing 20% of their claims; *In Re Hurd,* 6 B.R. 329, 6 B.C.D. 1097 (Bkrtcy.N.D.Ind.1980), where the court held that § 727(a)(8) did not apply to bar a Chapter 13 case filing within 6 years of a Chapter 7 discharge, but the debtors 5% payment plan was not proposed in good faith where the Chapter 13 Petition was filed 2 days after a Chapter XIII Petition, which had proposed 100% payments to unse-

cured creditors, was voluntarily dismissed; *In Re Chaffin,* 4 B.R. 324, 6 B.C.D. 426 (Bkrtcy.Kan.1980), where the court refused to confirm a zero-payment Chapter 13 plan because the debtors had been discharged under Chapter VII of the Act less than 6 years previously.

The Bankruptcy Court in *Chaffin* acknowledged that Sections 727(a)(8) and (9) had no specific application to cases under Chapter 13, but relied in part on equitable principles which necessarily supplement the Code. Although the court recognized that it frequently confirms zero-payment plans in other instances, such a plan is tantamount to a Chapter 7 liquidation and is akin to an extension of the liquidation proceedings. This is clearly contrary to the purpose behind having a six-year bar for successive liquidation proceedings, and thus could not be allowed.

The argument frequently raised to limit Sections 727(a)(8) and (9) to cases under Chapter 7 is Section 103(b) of the Code, which reads:

(b) Subchapters I and II of chapter 7 of this title apply only in a case under such chapter.

Section 727 appears in Subchapter II of chapter 7, and thus, was not meant to apply specifically or directly to cases proceeding under Chapter 13. However, there is nothing in the Code and nothing has been presented to this court which would disallow the application of the standards for conduct set forth in Section 727 as examples of "good faith" standards to be taken into account when determining whether to confirm a Chapter 13 plan. Cf. *In Re Sotter,* 28 B.R. 201, 10 B.C.D. 369 (Bkrtcy.S.D.N.Y. 1983), where the court dismissed a Chapter 13 plan on the ground of lack of good faith, where the debtor provided only minimal payment to unsecured creditors and the major unsecured claim was a civil judgment for making false statements and converting funds, which arose out of the same transaction for which the debtor had pled guilty in a criminal action. But see *In Re Ciotta,* supra, 4 B.R. 253, 6 B.C.D. 346, 347, where the court in a footnote, as *obiter dictum,*

stated that even the heinous wrongs listed in § 727, such as transfers of property in fraud of creditors, the making of false oaths and refusing to obey court orders, are also inapplicable in Chapter 13 cases by virtue of § 103 of the Code.

There is no question that a bankruptcy court is a court of equity and is free to apply equitable principles when the circumstances demand it. *Stuhley v. Hyatt,* 667 F.2d 807 (9 Cir.1982); *Matter of Garfinkle,* 672 F.2d 1340, 1346 (11 Cir.1982). Even though the confirmation of Chapter 13 plans is subject to liberal interpretation and the rule in this District is that zero-payment plans meet the Chapter 13 criteria for confirmation, *Raikes,* supra, 22 B.R. 837 (B.C.N.J.1982), this court must also consider the equitable treatment of creditors. Congress could not have intended to allow discharge in a Chapter 13 under any circumstances, no matter how egregious a debtor's conduct, or how a debtor attempted to abuse the system by successive filings.

Therefore, I must conclude that the standards enumerated in § 727 can be applied by way of analogy and pursuant to equitable principles to preclude confirmation of a Chapter 13 plan, depending on the specific provisions made in the plan. This does not mean that conduct which precludes discharge under Section 727 will always preclude the confirmation of a Chapter 13 plan, but merely that a debtor may have to meet a higher payment percentage or make other provision for debts which result from conduct specified in § 727. The requirements for confirming each Chapter 13 plan must be determined on its own unique facts.

The facts in each of the cases before the court must be considered. The only questionable conduct here present is the debtors' filing of their Chapter 13 petitions within 6 years of their discharge under Chapter 7. On its face, I must conclude that this is evidence of a lack of good faith under § 1325 of the Code. The proponent of the Chapter 13 plan has the burden of proof as to its confirmation, and must satisfy this court that the plan was filed in good faith, taking into account the successive filing within 6 years. *In Re Wolff,* 22 B.R. 510, 9 B.C.D. 451 (B.A.P. 9 Cir.1982); *In Re Elkind,* 11 B.R. 473, 7 B.C.D. 1019 (Bkrtcy. Colo.1981).

In the Ponteri case, the debtors originally filed a 5% plan and the Standing Trustee had indicated that their budget was out-of-line since they budgeted the sum of $650.00 monthly for food. They revised their plan to provide a 13% dividend to unsecured creditors; they have no secured creditors listed on their petition. The debtors contend that all scheduled unsecured creditors' claims arise solely from claims against Ponteri Construction Company, Inc., which is a dissolved corporation previously owned and operated by the husband debtor. The debtors contend that numerous lawsuits were brought in state court against the individual debtors even though the claims arose from corporate debts. The husband debtor admits that he was also the guarantor of several of the corporate debts, in an amount exceeding $40,000.00.

The debtors may be seeking the wrong relief, from possible preexisting debts, by filing the present Chapter 13 Petition. Their relief may possibly be by application to reopen their previous bankruptcy estate, which had been filed under Chapter VII of the Bankruptcy Act. They could now seek to amend their schedules to include additional creditors who were unknown to them at the time of the filing of their original petition in bankruptcy. The facts in this case are not clear whether the debtors knew of their individual liability for the corporate debts.

In order for a bankrupt, now known as a debtor, to remain liable to creditors who exist at the time of the filing, but have not been scheduled, the creditors *must be known* to the bankrupt. Section 17 of the Bankruptcy Act (11 U.S.C. 17a(3) provides a discharge in bankruptcy shall release a bankrupt from all his provable debts except,

> . . . have not been duly scheduled in time for proof and allowance, with the name

of the creditor, *if known to the bankrupt,* unless such creditor had notice or actual knowledge of the proceedings in bankruptcy; (underlining added)

Section 523(a)(3) of the Bankruptcy Code is in accord with Section 17 of the Bankruptcy Act.

Should such facts be established on re-opening the Petition, the creditors who are added to the schedules are afforded the rights which existed at the time of the previous case administration, such as filing claims, receiving dividends to which creditors would be entitled, objections to discharge and dischargeability of debts. I am not here passing upon the rights of the debtors to reopen the previous case as such an application has not been made.

■ However, the filing of a new petition under Chapter 13 within six years as proposed by the debtors, in the nature of a composition for payment of a small amount rather than extension of the debts, flies in the face of the good faith provisions of the Bankruptcy Code.

The Ponteris allege no physical or mental disabilities or circumstances outside of their control which caused them to incur the debts listed on their petition. The husband and wife are both working regularly and have a monthly take-home pay of $2,021.48. Their expenses are not unreasonable. Although these circumstances appear sufficient to meet the requirements for confirmation, the debtors have not met their burden of proving "good faith" because they have an additional burden as a result of their discharge under Chapter 7 within 6 years of the present filing. A filing within the 6-year period requires the debtors to meet a higher standard for confirmation in order to meet the requirement of good faith.

These debtors have not met this burden of proof. They neither provide for meaningful, substantial payments to creditors, nor do they allege any overriding, unusual circumstances which would allow this court to permit less than substantial payments to creditors based on the equities in the case. Both debtors are healthy and are employed, and their minimal, 13% payment plan is not proposed in good faith, given the circumstance that they have previously been discharged under Chapter 7 within 6 years.

■ On the other hand, although Janice Brodie alleges no extreme, unusual circumstances, such as disability, her plan provides for a 100% payment to unsecured creditors. Her only creditors are the mortgagee and utility company, which indicates that she is not using the provisions of the Bankruptcy Code to run up unsecured debts, not provide substantial payment under a Chapter 13 plan and allow them to be discharged within a short period of time by successive filings within 6 years of each other. The debtor's Petition indicated that she has 3 dependents living with her, has a monthly take-home pay of $810.96 and expenses of $747.59. All of these expenses appear reasonable. Since she has not run up excessive unsecured debt since her last filing, and because she proposes a 100% payment plan, the debtor has met her burden of demonstrating that her plan was filed in good faith. There is no indication in this case that the debtor is attempting to abuse the bankruptcy system by her successive filings.

An order shall be submitted in the Ponteri case denying confirmation of the debtors' plan. I will give them an additional 10-day period to allow them to amend their plan to provide substantial payments to their unsecured creditors. If this is not done, their Petition will be dismissed.

An order shall be submitted in the Brodie case confirming the debtor's plan as submitted.