In the Matter of Robert L. COLVER, Debtor.

**GREEN TREE ACCEPTANCE, INC., Plaintiff,**

v.

**Robert L. COLVER and Hugh Hough, Trustee, Defendants.**

**Bankruptcy No. BK–LV 80–0863. Adv. No. 81–0079.**

United States Bankruptcy Court, D. Nevada.

May 19, 1981.

Milton W. Keefer, Las Vegas, Nev., and Bernard P. Simons of Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for plaintiff.

Terry Leavitt of Leavitt, Graves & Leavitt, Las Vegas, Nev., for defendants.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

LLOYD D. GEORGE, Bankruptcy Judge.

Before the Court for consideration is a Motion for Summary Judgment, by the Plaintiff, with respect to its objection to the Debtor's Chapter 13 plan of arrangement and as to its COMPLAINT TO LIFT STAY. Inasmuch as the Court finds that there are still factual disputes which remain to be resolved in both of these matters, the said motion will be denied.

## I. BACKGROUND

On September 12, 1980, the above-named Debtor filed his Original Petition and Plan Under Chapter 13, Title 11 of the United States Code. Proposed in the said plan was a modification of the rights of a secured party as to a mobile home, admittedly used by the Debtor as his principal residence. The value of this mobile home is listed in the Debtor's petition and plan at $7,500 with the Plaintiff's security interest in the said mobile home being placed at $29,642.00. Following a dispute between counsel as to the legal nature of the Debtor's mobile home, as real or personal property, an Agreed Statement of Facts was filed with the Court, as a proposal, on November 24, 1980. It contains the following statements:

"On July 23, 1979, ROBERT L. COLVER, 825 North Lamb, Space # 64, Las Vegas, Nevada; purchased a 1979 Fuqua, First Cabin Mobile Home, from Villa Mobile Homes for $68,943.00 payable in 179 instalments of $367.10, commencing September 5, 1979, and the contract for the same was assigned to GREEN TREE ACCEPTANCE, INC. on the same date. A copy of the contract and Nevada Certificate of Title is attached.

"The Debtor defaulted in payment of the instalments due on said contract on or about March 5, 1980, after paying six (6) monthly instalments, and has not paid the same nor returned the mobile home to the Creditor. There is a net balance due in the sum of $29,642.66, together with late charges of $90.00 and interest due thereon from March 5, 1980 to date.

"On September 8, 1980, the Eighth Judicial District Court issued a Writ of Possession to GREEN TREE ACCEPTANCE, INC. to replevy the vehicle and on September 12, 1980 the Debtor filed his petition in bankruptcy under Chapter 13 of the Bankruptcy Act, staying the replevin proceedings in District Court.

"The plan proposed by the Debtor contemplates the payment of $233.35 monthly to the Trustee, the payment of preferred monthly payments of $182.73 to GREEN TREE ACCEPTANCE, INC. upon the secured claim, based upon a Fair Market Value of said mobile home in the sum of $7500.00, and the unsecured creditors to be paid 10% of the claims allowed.

"The issue of "Fair Market Value" is contingent upon the determination of whether the mobile home is to be treated the same as real property, since it is the principal residence and domicile of the Debtor, and therefore exempted from inclusion in the Bankruptcy Act.

"The mobile home is situated on leased space # 64 in Casa Linda Mobile Home Park, 5250 East Lake Mead Boulevard, Las Vegas, Nevada. The home is on jacks without wheels attached and is adjacent to a paved driveway and a concrete patio with an aluminum awning attached to the mobile home and to the patio. The space is rented for $160.00 a month and the Debtor pays all utilities, the taxes on the mobile home and is responsible for its maintenance and repair.

"The mobile home is 48′ long, 24′ wide, 11′ high, has 8 rooms and weighs 9 tons. It has been connected to the applicable water system, sewage system, gas lines, electric lines, telephone lines and is used by the Debtor and his mother as a permanent residence."

## II. ANALYSIS OF THE FACTS AND THE LAW

On March 12, 1981, the Plaintiff filed a MOTION OBJECTING TO CONFIRMATION OF PLAN and a COMPLAINT TO LIFT STAY, to allow it to recover the Debtor's mobile home by way of a state court action. The thrust of the Plaintiff's arguments in both of these matters is twofold, and goes as follows: First, it argues that the mobile home in question is real property and the principal residence of the Debtor. Therefore, the Plaintiff maintains, 11 U.S.C. § 1322(b)(2) (1978) would prevent the Debtor from modifying its rights as to the full amount secured against the mobile home. This being the case, the Plaintiff asserts that no equity remains for the Debtor in the mobile home and that its value is constantly deteriorating, to the point that it will soon be worth little as collateral for the debt owing the Plaintiff. Hence, the Plaintiff urges the Court to lift the automatic stay, so that a foreclosure sale on the mobile home can occur and to refuse to allow the Debtor to modify the Plaintiff's rights in the mobile home.

As a second line of attack, the Plaintiff argues that the Debtor has greatly undervalued the mobile home, in claiming it to be worth only $7,500.00. It, therefore, maintains that the Debtor's plan was not filed in "good faith," thus making its confirmation improper under 11 U.S.C. § 1325(a)(3) (1978). Also, given the fact that the true value of the mobile home is approximately the amount of the Debtor's obligation to Green Tree Acceptance, Inc., the Plaintiff again argues that a lifting of the automatic stay, provided by 11 U.S.C. § 362 (1978), should occur.

On April 17, 1981, the Plaintiff filed its present Motion for Summary Judgment, based upon the above-cited statement of facts and upon an additional statement of facts lodged herein by the Debtor on April 2, 1981. It claims that, based upon the facts therein agreed to by counsel, the Court must, as a matter of law, find in its favor, both in its objection to confirmation and with respect to its Complaint to Lift Stay.

At the crux of the Plaintiff's motion is its assertion that the Debtor's mobile home is real property. If it is real property, the Debtor's plan may not be confirmed, as it now reads. Moreover, since the Debtor admits that he has no equity in the mobile home, it would be difficult, indeed, for him to withstand the Plaintiff's attempt to get the section 362 stay lifted.

As factors in its argument that the mobile home is real property, the Plaintiff notes that since 1977 such structures have been subject to Nevada's homestead laws. Further, it is observed that, under the Revised Federal Truth-in-Lending Regulation Z, § 226.2, a mobile home is deemed a "dwelling," if it is used as a residence. Finally, the fact that the mobile home has had its wheels removed and is connected to a number of local utilities is presented as showing the permanent relationship between this mobile home and the real property upon which it is located.

In reviewing the citations of counsel for both parties, the Court is convinced that applicable state law should guide its decision as to whether this property is real or personal in nature. *See* 5 Collier on Bankruptcy ¶ 1322.01[3][B](i)(a), at 1322–8 through 1322–9 (15th ed. 1980). With this in mind, the Court has carefully considered the inclusion of mobile homes within the definition of a residence upon which a homestead exemption might be obtained. In this regard, NRS 115.010(1) (1979) provides:

"1. The homestead, consisting of *either* a quantity of land, together with the dwelling house thereon and its appurtenances, *or* a mobile home whether or not the underlying land is owned by the claimant, not exceeding $50,000 in value, to be selected by the husband and wife, or either of them, other head of a family, or other single person claiming the homestead, is not subject to forced sale on execution, or any final process from any court, except process to enforce the payment of the purchase money for the premises, or for improvements made thereon, or for legal taxes imposed thereon, or for the payment of:

(a) Any mortgage or deed of trust thereon executed and given; or

(b) Any lien to which prior consent has been given through the acceptance of property subject to any recorded declaration of restrictions, deed restriction, restrictive covenant or equitable servitude, by both husband and wife, when that relation exists."

(Emphasis supplied.)

Nowhere in this statute, however, or in the provision of the Nevada Constitution upon which it is based, Nev.Const., Art. 4, § 30 (1979), is a homestead defined as including only real property residences. Traditionally, the homestead concept did exclusively involve real property interests. Nonetheless, in light of changing lifestyle patterns, it would not appear to be improper, legally or otherwise, for the Nevada Legislature to include, as exempt homestead property, even personalty serving the same residential role as the earlier real property homesteads.

On the other hand, the Debtor has directed the Court to a number of statutes in which the Nevada Legislature has provided a highly-workable distinction as to when a mobile home should be considered realty and when it is to be deemed personalty. The first such "definition" is found in NRS 361.035(1)(b) & 361.244(1) (1979), which describe those circumstances on which a mobile home may be considered to be real property, for state taxing purposes. NRS 361.035(1)(b) (1979) contains the following language:

"1. 'Real estate' or 'real property' means:

. . . .

(b) Any mobile home or factory-built housing which meets the requirements of NRS 361.244."

NRS 361.244(1) (1979), in turn, allows:

"1. A mobile home, as defined in NRS 361.561, constitutes real property if the running gear is removed and:

(a) It becomes, on or after July 1, 1979, permanently affixed to land which is owned by the owner of the mobile home; or

(b) It became so affixed before July 1, 1979, and the owner files with the county assessor by May 1, 1980, a statement declaring his desire to have the mobile home classified as real property."

From another angle, the Debtor points out that a broker of mobile homes need not obtain a real estate brokerage license, unless he sells a mobile home "with any interest in real estate." NRS 645.030(1)(a) (1979).

It may still be argued, however, that to the extent the Debtor "owns" a leasehold interest in the real property to which his mobile home is affixed, it may be deemed, under the above definitions, to constitute real property, itself. Nevertheless, the Court believes that the fundamental thrust of these statutes would still preclude a finding that the Plaintiff's interest in the Debt-

or's mobile home is an interest in real property. In order to be deemed such, it is clear that the Nevada Legislature intended that a mobile home be considered to exist, as a unit, with the real property upon which it is placed. That is to say, the mobile home and the land to which it is affixed must not be legally severable.

In the present case, the Plaintiff only has an enforceable security interest in the mobile home. It has never attempted to obtain any security interest, whatsoever, in the land upon which this structure is located. This is because it has, itself, always deemed the mobile home to be personal property, in the nature of a motor vehicle. Under Paragraph 3 of the Security Agreement entered into between these parties, the following language is noted:

"Buyer further agrees that the Collateral is now and shall continue to be personal property until the indebtedness on this agreement is paid in full, notwithstanding the manner and degree of affixation of the Collateral to any real property and notwithstanding the extent of [sic] which such affixation shall facilitate the use and occupation of such real property."

Paragraph 6 of this same agreement provides as follows:

"6. Whenever a default shall occur, or at any time thereafter (such default not having previously been cured), Seller at its option and without demand or notice of any kind, may declare the indebtedness, less the unearned charges, to be immediately due and payable and Seller shall have all the remedies of a secured party under chapters 104 (the Uniform Commercial Code) and 482 (the motor vehicle statutes) of the Nevada Revised Statutes. If any notice is required by law and no time therefore is stated, such notice shall be deemed reasonably and properly given if mailed, postage prepaid, to the address of Buyer shown in the section entitled "Address of Buyer After Receipt of Possession of Collateral" at least ten (10) days before the event with respect to which notice is required."

Article 9 of the Nevada Uniform Commercial Code applies only to security interests "in personal property or fixtures." NRS 104.9102(1)(a) (1979). At no time has Plaintiff argued that this mobile home is, in fact, a fixture under Article 9.

Moreover, when the Plaintiff sought to recover its collateral, prior to the Debtor having filed his petition under Chapter 13 of the Bankruptcy Code, it utilized a Writ of Possession, a remedy which only has effect as to personal property. *See* NRS 31.-840–.950 (1979).

### III. CONCLUSION AND ORDER

Given the above facts, the Court must deem the Debtor's mobile home to be in the nature of personal property, for purposes of ascertaining the rights of the Plaintiff as to that mobile home. Therefore, 11 U.S.C. § 1322(b)(2) (1978) would not prevent the Debtor from modifying the rights of the Plaintiff by way of his Chapter 13 plan of arrangement. Nevertheless, the Court must still hear evidence as to the value of the said mobile home and as to the good faith of the Debtor in proposing his plan. It is, therefore, hereby

ORDERED, ADJUDGED, AND DECREED that the PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE, filed herein by the above-named Plaintiff on April 17, 1981, be denied, and that an evidentiary hearing be held in the near future as to any outstanding issues of fact in this matter.