**In re Jack A. BLEVINS and Diama L. Blevins, Debtors.**

**No. 792–70243 RCM–13.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Oct. 21, 1992.

James 'Q. Smith, Wichita Falls, TX, for debtors.

Richard A. McKinney, Dallas, TX, for Green Tree.

### *MEMORANDUM OPINION*

ROBERT McGUIRE, Chief Judge.

This opinion involves an 11 U.S.C. § 1322(b)(2) issue in the context of a stay hearing.

On October 1, 1992, came on to be heard the Motion to Lift Automatic Stay and Request for Adequate Protection filed by Green Tree Financial Corp.–Texas, f/k/a Green Tree Acceptance of Texas, Inc. (hereinafter "Green Tree") in the above bankruptcy case of Jack A. and Diama L. Blevins (hereinafter "Debtors"), and came the parties, by and through their attorneys, clients, and witnesses. Following are the Court's findings of fact and conclusions of law in connection therewith, pursuant to Bankruptcy Rule 7052.

This Court has jurisdiction of this contested matter pursuant to 28, U.S.C. §§ 134 and 157(b)(2)(G) and 11 U.S.C. § 362. This proceeding is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(G). Additionally, this is a proceeding pursuant to Bankruptcy Rules 4001 and 9014 to obtain relief from the automatic stay.

In September 1984, Debtors purchased a 1984 Cameo C–464 mobile home, Serial No. 501–05115AB and executed a Manufactured Home Retail Installment Contract and Security Agreement (the "Contract"). The Contract provided that it would be assigned to Green Tree and that the Debtors' monthly payments would be $524.03 for 180 months. Green Tree is presently the legal owner and holder of the Contract. Pursuant to the terms of the Contract, Debtors gave Green Tree a security interest in the mobile home. Attached to Green Tree's motion was the front page of the Contract, but not the reverse side, and a

copy of the certificate of ownership.[1] To the extent relevant, there was no proof that Green Tree's security agreement or a financing statement thereon was recorded in the real property records as a fixture filing or otherwise. Green Tree has not argued that the mobile home was a fixture under Article 9 of the Texas Business and Commerce Code.

As of July 27, 1992, the payoff of the home was $27,696.21 and the fair market value was less than the payoff.

Debtors have proposed to pay Green Tree $6,500 as the value of the mobile home through their Chapter 13. Green Tree contends that the fair market value of the mobile home is more than $6,500; to wit, $23,755. The Court finds the fair market value of the home is $18,500. Except for valuation, the underlying background facts in this matter are substantially undisputed. The mobile home has been on the Debtors' land for approximately seven to eight years. Debtors bought the land before they bought the mobile home from Green Tree, and they have a mortgage with a third party on the real estate where the mobile home is located.

The mobile home was placed on the land; the wheels were removed and the axles cut off, and it was placed on eight-inch concrete blocks. The mobile home is anchored to the property by some steel bars. The mobile home has a concrete porch built on to it. It has electricity and a septic tank. There was credible testimony that it may be removed without substantial damage to the realty or to the mobile home itself.

Green Tree contends that Debtors are wrongfully attempting to modify Green Tree's claim, allegedly contrary to 11 U.S.C. § 1322(b)(2). Debtors allege that Green Tree does not have a claim secured by Debtors' real property, but allegedly have a lien secured by a lien on personal property which can be modified.

Green Tree requests that the Court enter an order lifting the automatic stay to allow Green Tree to repossess and sell the mobile home because (1) allegedly Debtors have no equity in the home; (2) the home is not necessary for Debtors' reorganization; (3) Debtors allegedly defaulted on their postpetition payments; (4) Debtors allegedly are attempting to modify a claim secured by real property, contrary to § 1322(b)(2); and (5) Debtors' Chapter 13 plan fails to provide that Green Tree will be paid the fair market value of the mobile home.

The court, in *In re Plaster*, 101 B.R. 696 (Bankr.E.D.Okla.1989), posed the issue as follows:

...2. The Debtors' attempted modification stems from § 1322(b)(2) wherein it states:

'(b) ... the Plan may—

(2) modify the rights of holders of secured claims, *other than* a claim secured only by a security interest in *real property* that is the debtor's principal residence ...'

(Emphasis added)

It is apparent from the legislative history of this Section that Congress intended precisely what it wrote; that is, modification could be accomplished 'except claims wholly secured by real estate mortgages.' *See* S.Rep. No. 95–989, 95th Cong., 2d Sess. 141 (1978), pp. 5787, 5927.

Thus, the issue presented for consideration is whether a mobile home is deemed realty or personalty for the purpose of interpretation of the above references Section of the Bankruptcy Code.

■ 3. The determination of whether this property is real or personal in nature is governed by the applicable state law. *See* 5 Collier on Bankruptcy 1322.06 at 1322–14 (15th Ed.1980) and *In the Matter of Robert L. Colver*, 13 B.R. 521, 7

1. Subsequent to the trial, and in response to Court request, Green Tree furnished the Debtors and the Court the reverse side of the contract, which, in Paragraph 8 entitled "Protection of the Manufactured Home", provides in part:
... I will not.... (d) attach the manufactured home to any real estate, and the manufac-

tured home will always be treated as personal property....
The default provisions in Paragraph 10 provide in part:
... If I default ... you can repossess the manufactured home.

B.R.Ct.Dec. (CRR) 859 at 860 (Bankr. D.Nev.1981).

*In re Plaster, supra* at 696–697. (Emphasis supplied).

In 1 Keith M. Lundin, *Chapter 13 Bankruptcy* (hereinafter "— Lundin ——") § 4.31, p. 4–27, it is stated:

> § **4.31** The exception to modification of secured claims in § 1322(b)(2) is focused to protect claims that are secured '*only* by a *security interest* in *real property* that is the debtor's *principal residence.*' Courts have strictly construed this exception to limit its protection to pure home mortgages where the creditor has taken no other security and where the real estate has no use other than the debtor's principal residence.
>
> For example, § 1322(b)(2) does not protect a creditor with a security interest in irrigation equipment and the debtor's principal residence. A creditor is not secured 'only by the debtor's principal residence' where the creditor also has a security interest in an adjoining vacant lot. A security interest in a mobile home that is personal property under state law is not a security interest in 'real property that is the debtor's principal residence'; if the mobile home is affixed to realty and has become real property under state law, then a claim secured only by the mobile home cannot be modified.

1 Lundin *supra.* (Footnotes deleted). *Citing, In re Owens,* 36 B.R. 661 (Bankr. M.D.Tenn.1984); *In re Carter,* 116 B.R. 156 (Bankr.W.D.Mo.1990); *In re Plaster, supra; In re Thurston,* 73 B.R. 138 (Bankr.N.D.Tex.1987) (holding that, under the circumstances of that case, under Texas law, a mobile home is not regarded as residential real estate and that a lien served by a mobile home is not protected from modification by § 1322(b)(2).[2] *Also see, In re Speights,* 131 B.R. 205 (Bankr. N.D., Fla.1991). In *Thurston, supra,* the court discussed the possible applicability of Title 79, *Interest,* Texas Revised Civil Stat.

art. 5069–6A01 *et seq.* and 5069–6A–11(3). *See,* 51 Tex.Jur.3d, Manufactured Housing Etc. § 101. In our case, the land and mobile home were not purchased together. Therefore, Green Tree was not in a position to follow 5069–6A–11(3) to the extent it is relevant to the issues in question. In *Thurston,* it is unclear whether the mobile home and land were purchased together.

In Texas, prescribed records and reports are required of persons moving mobile homes in Texas. Texas Tax Code § 21.21.

Specific statutory rules govern Texas attachment of tax liens to particular types of property such as manufactured homes. Texas Tax Code §§ 32.014 and 32.015. Under § 32.015, a tax lien can be filed with the Texas Department of Licensing and Regulation if the tax has not been paid by January 31 of the year following the year in which the tax is assessed.

Under § 32.015(g), the term "manufactured home" does not apply to any manufactured home which has been attached to real estate and for which (unlike the facts in our case) the document of title has been canceled. *See,* V.A.T.S. art. 5221(f) § 19(J); 51 Tex.Jur.3d, Manufactured Housing Etc. § 64. Green Tree further cites *Logan v. Mullis,* 686 S.W.2d 605 (Tex.1985) and *Minnehoma Financial Co. v. Ditto,* 566 S.W.2d 354 (Tex.Civ.App.—Ft. Worth 1978).

While agreeing that, in Texas, a debtor may be able to claim a homestead exemption in a mobile home under certain circumstances (*Minnehoma Financial Co. v. Ditto, supra* at 357), it appears that, under the facts of this case, Green Tree's lien was not secured "only by a security interest in *real property* that is Debtors' principal residence". It appears that, applying Texas law to the facts of this case, the mobile home was still in the nature of personal property. *Matter of Colver,* 13 B.R. 521, 525 (Bankr.D.Nev.1981). *See,* n. 1 and Texas authorities referred to above discussing

---

**2.** *Green Tree* respectfully disagrees with the *Thurston* court, contending that VATS art. 5069–6A11, cited by the *Thurston* court, is solely concerned with consumer credit issues and that the Texas legislature's purpose was to allow a credi-

tor to treat a mobile home as realty for purposes of a credit transaction which was allegedly a different standard than a determination of whether a mobile home should be considered realty for purposes of § 1322(b)(2).

specialized treatment of mobile homes under Texas statutes and also situations when mobile homes may be considered realty. Thus, Debtors may modify the rights of Green Tree under the security agreement consistent with 11 U.S.C. § 1322(b)(2).

Any payments heretofore made by the Debtors to the Trustee for the benefit of Green Tree are to be held by the Trustee in trust for the benefit of Green Tree, and not returned to the Debtors, but paid to Green Tree if, for some reason, this case is dismissed.

Per Green Tree's alternative prayer, Debtors are to propose a modification of their plan, within thirty days of the date of this opinion, to provide for payout of the Green Tree's $18,500 lien at 10%.[3] The stay will lift at the expiration of thirty days from this date if such a modification is not filed.

An order will be entered in accordance with this opinion.

---

**3.** Debtors' plan provided for 8% interest on this lien, but Debtors offered no testimony on interest rate. Green Tree's witness's testimony supported an interest rate of at least 10%. *In re Moore,* 29 B.R. 27 (Bankr.D.Colo.1983).