**In re Donna B. STRATTON, Debtor.**

**No. 00–50056–13.**

United States Bankruptcy Court,
D. Montana,
Butte Division.

May 9, 2000.

James C. Bartlett, Kalispell, MT, for the Debtor.

James H. Cossitt, NW MT Bankruptcy Services, PLLC, Kalispell, MT, for Creditor.

## ORDER

RALPH B. KIRSCHER, Bankruptcy Judge.

After due notice hearing was held at Missoula on May 2, 2000, on the Debtor's motion for valuation of security of Greenpoint Credit ("Greenpoint"), filed April 3, 2000, and Greenpoint's objection thereto and motion for relief from automatic stay, both filed April 13, 2000. The Debtor Donna B. Stratton ("Donna") filed an objection to Greenpoint's motion for relief from the stay on April 21, 2000, and appeared and testified at the hearing, represented by attorney James C. Bartlett ("Bartlett"). Greenpoint was represented by attorney James H. Cossitt ("Cossitt"). Exhibits 1, 2, 3, 4, 5, 6, and 7 were admitted into evidence. At the close of the hearing the Court took the matter under advisement. Upon review of the record and the applicable law, Greenpoint's objection is overruled and its motion for relief from the automatic stay is denied. Debtor's motion for valuation of security is granted, and the value of Greenpoint's security and allowed secured claim is fixed in the sum of $37,712.

## FACTS

Donna filed her voluntary Chapter 13 petition on January 11, 2000, together with her Schedules and Statements, and Chapter 13 Plan. Donna listed no real property on Schedule A, and listed among her personal property on Schedule B, paragraph 23, a 1997 Moduline Woodridge 28x60 mobile home (hereinafter the "mobile home") at a current market value of $37,712. Donna claimed a homestead exemption in the mobile home pursuant to Mont.Code Ann. §§ 25–13–615 and Title 70, chapter 32. There has been no objection to the allowance of her homestead exemption filed pursuant to F.R.B.P. 4003(b).

Schedule D lists creditors with secured claims, including Greenpoint with a claim

secured by the mobile home. Exhibit ("Ex.") 1 includes as an attachment Ex. A, a retail installment contract between Donna and Steve W. Stratton ("Steve") and Bankamerica Housing Services, a division of Bank of America, FSB, dated September 8, 1997, whereby Donna and Steve financed the amount of $55,059.00 for the purchase of a manufactured home from Organic Energy, Inc. dba Alpine Home Center in Columbia Falls.

Donna's mobile home is located at 149 Saki Lane in Columbia Falls, Donna's address listed on her petition where she lives with her 3 children. Donna testified that 149 Saki Lane is located in a mobile home court, that her mobile home is not attached to the real property at that address, and that she does not own any real property. There is no evidence to the contrary.

Donna and Steve defaulted under the terms of the installment contract, and Greenpoint sent out a notice of default dated May 26, 1999. Ex. 1, p. 11. In August of 1999, Cossitt, representing Greenpoint, filed a complaint against Donna and Steve in the Montana Eleventh Judicial District Court, Flathead County, Cause No. DV–99–404B, to recover the mobile home and for damages under the retail installment contract. Ex. 1. In Greenpoint's complaint Cossitt alleges that the "approximate market value for the Moduline mobile home is $37,712.60." Ex. 1, p. 2, ¶ 9. Donna's answer [1] admits Cossitt's allegation of market value. Ex. 2, p. 1, ¶ 2.

Donna's Chapter 13 Plan filed on the petition date provides for Greenpoint's claim as an impaired secured claim, allowed in the amount of $37,712. The first meeting of creditors took place in this case pursuant to 11 U.S.C. § 341(a) on March 18, 2000, at Kalispell. The file reflects and Donna testified that at the meeting she discussed her defaulted Greenpoint loan with Cossitt. Donna and Cossitt discussed options, including Donna selling the mobile home on the open market, or Greenpoint purchasing the mobile home from Donna and renting it back to her. Donna testified that Cossitt was going to call her after the meeting for further discussions aimed at resolving the matter, but that Cossitt never called. Having observed Donna's demeanor while testifying under oath and during cross examination, the Court finds Donna's testimony is credible. Since Cossitt failed to contact Donna or Bartlett to reach an accommodation, Donna decided against selling the mobile home when she learned that she would have to pay the same amount of money for another used mobile home to live in.

Donna filed her motion for valuation of Greenpoint's security on April 3, 2000, in conformity with Mont. Local Bankruptcy Form ("LBF") 22 and Local Bankruptcy Rule 3012–1. Donna's motion alleges the amount of Greenpoint's allowed secured claim is $37,712.

Greenpoint filed its objection and Proof of Claim No. 6 on April 13, 2000, asserting a claim in the sum of $61,676.08 secured by the mobile home. Attached to its Proof of Claim is an Order and Judgment against Steve dated February 8, 2000, entered in Cause No. DV–99–404B. The Order and Judgment was prepared by Cossitt, and signed by the district judge.[2] Cossitt included finding of fact No. 9 in the Order and Judgment which states: "The approximate market value of the Moduline mobile home is $37,712.60." In Greenpoint's objection, Cossitt alleges that the $37,712.60 value is "only an approximate value" and that Greenpoint was seeking to arrange for an appraisal. However, Cossitt offered

---

1. Donna's answer indicates she was in the process of dissolution of her marriage to Steve. Ex. 2, p. 2.

2. The Court is uncertain how the Order and Judgment against Steve, as a codebtor, is a supporting document as to its Proof of Claim against Donna, especially since the entry of the Order and Judgement against Steve was entered by the state district court judge after the petition date of January 11, 2000 and most likely was in violation of 11 U.S.C. § 1301.

no appraisal at the hearing on May 2, 2000, and offered no exhibit consisting of a current NADA appraisal which he suggests in Greenpoint's objection places the value of the mobile home at $48,615.55.

In addition, Cossitt argues that Greenpoint's secured claim cannot be modified as a matter of law under the anti-modification provision of 11 U.S.C. § 1322(b)(2) because the mobile home is Donna's primary residence, citing *Nobelman v. American Savings Bank et al. ("Nobelman")*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), and *In re Crain*, 243 B.R. 75 (Bankr.C.D.Cal.1999). In Greenpoint's objection to Donna's list of exhibits and witnesses filed May 1, 2000, Cossitt goes further and argues the "plain language" of § 1322(b)(2) prevents cram down of Greenpoint's secured claim on Donna's primary residence. At the hearing, Bartlett contended that Donna's mobile home does not constitute real property subject to the anti-modification provision of § 1322.

## DISCUSSION

Donna filed her motion for valuation as required under LBR 3012–1 to establish the amount of Greenpoint's allowed secured claim prior to the confirmation hearing. Section 506(a) provides that a claim is secured only to the extent of the value of the property on which the lien is fixed while the remainder is considered unsecured. *United States v. Ron Pair Enterprises ("Ron Pair")*, 489 U.S. 235, 239, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290, 297 (1989); *In re Todd*, 15 Mont. 251, 256, 194 B.R. 893, 895 (Bankr.1996). Such valuation is required to determine whether her

Plan provides for Greenpoint's allowed secured claim in an amount required under 11 U.S.C. § 1325(a)(5)(B)(ii).

■ Greenpoint argues that regardless of the value, its secured claim "cannot be modified as a matter of law" under § 1322(b)(2) because the mobile home is Donna's "primary residence". However, the anti-modification provision of § 1322(b)(2) simply does not apply in the instant case because Greenpoint's claim is not "secured only by a security interest *in real property* that is the debtor's principal residence". (Emphasis added).

Greenpoint's "rights" in Donna's mobile home are created and defined by state law. *Nobelman*, 508 U.S. at 329, 113 S.Ct. at 2110; *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Ex. 1 shows that the retail installment contract granted Greenpoint a security interest in the mobile home and other goods[3] under the Uniform Commercial Code—Secured Transactions ("UCC"), not under mortgage law, and that Montana law governs.

In Montana, "real property" is defined as land, that which is affixed, incidental, appurtenant to land, or that which is immovable by law. Mont.Code Ann. § 70–1–106. "Every kind of property that is not real is personal." Mont.Code Ann. § 70–1–108. The record in this case is uncontroverted that Donna owns no real property. She testified she owned no real property, and listed none in her Schedules. She testified that the mobile home sits in a mobile home court, where it is not attached to real property.[4] The yoke re-

---

**3.** Because the instant case does not involve any real property, we do not reach the issue of whether the additional collateral listed in the retail installment contract prevents application of the anti-modification clause of § 1322(b)(2) because of the phrase "other than" in that section. *See In re Lee*, 215 B.R. 22, 25–27 (9th Cir. BAP 1997) (additional collateral deemed part of the real property and of insignificant value compared to the mortgage for which it was security); *but see*

*In re Loper*, 222 B.R. 431, 436–37 (D.Vt.1998) (criticizing *Lee*).

**4.** Exhibit 1, page 7, contains the following provision under the paragraph entitled "Events of Default:", "I will be in default under this Contract if: ... (g) I allow the Manufactured Home to become part of any real estate without first obtaining your written consent; ...." Exhibit 1, page 11, entitled "Notice of Default and Right to Cure Default under Federal Law", only identities nonpay-

mains attached to it. Therefore, the record shows that Donna's mobile home is not "affixed, incidental, appurtenant to land, or ... immovable by law" or otherwise classifiable as real property. No evidence exists that "the manufactured home has been declared an improvement in accordance with the provisions of 15–1–116." Mont. Code Ann. § 61–3–209(1). Therefore, the Court finds that Greenpoint's claim is not secured by a "security interest in real property that is the debtor's principal residence" as required for the anti-modification protection of § 1322(b)(2).

Cossitt argues that the "plain language" of § 1322(b)(2) prevents modification of Greenpoint's claim because the mobile home is the Debtor's principal residence. However, Cossitt's reading of § 1322(b)(2) ignores the statute's principal emphasis on real property. The clause "that is the debtor's principal residence" is nothing more or less than a clause modifying "real property". Without real property, the modifying clause is of no independent legal effect. Cossitt's reading of § 1322(b)(2) would ignore the primary term "real property" in favor of the modifying clause "debtor's principal residence" and render the requirement of real property to § 1322(b)(2) superfluous. This Court will not construe § 1322(b)(2) in such a manner. *See, In re Blevins,* 152 B.R. 130, 131 (Bankr. N.D.Tex.1992).

A fundamental canon of statutory construction is that courts disfavor interpretations of statutes that render language superfluous. *Connecticut National Bank v. Germain ("Germain"),* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). If Congress intended for the anti-modification provision of § 1322(b)(2) to apply to personal property which is a debtor's principal residence, such as the mobile home in the instant case, in the absence of real property security, it would have drafted that section accordingly. The Supreme Court recognized in *Nobelman* that § 1322(b) was

drafted to protect lenders' rights under state mortgage law. 508 U.S. at 329–30, 113 S.Ct. at 2110; *see also* 508 U.S. at 332, 113 S.Ct. at 2112 (Stevens, J., concurring) ("[T]he legislative history indicat[es] that favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market."). Greenpoint's rights are not governed under der Montana mortgage law. Its rights under its retail installment contract are governed like other retail transactions involving goods under the Montana Retail Installment Sales Act, Mont.Code Ann. §§ 31–1–201, *et seq.,* and under the Montana Commercial Code—Secured Transactions ("UCC"), Mont.Code Ann. §§ 30–9–101, *et seq.* Section 30–9–302(3)(b) specifically incorporates Mont.Code Ann. Title 61, chapter 3, which requires perfection of a security interest in manufactured homes through the Montana Department of Justice—Motor Vehicle Division. *See* Mont. Code Ann. § 61–3–209 and §§ 61–3–201, *et seq.* The retail installment contract between the parties requires perfection through Montana's UCC. Ex. 1, p. 6. Greenpoint's security interests in personal property under the UCC simply are not among the home lending mortgagees' rights protected against modification by § 1322(b)(2).

Section 1322(b)(2) prohibits modification of the rights of holders of claims "secured only by a security interest in real property that is the debtor's principal residence." § 1322(b)(2). The Supreme Court held in *Germain* that courts must presume that a legislature means what it says in a statute:

[C]anons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute

ment as the event of default and makes no reference to subparagraph (g) above.

what it says there. *See, e.g., United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241–242 [109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290] (1989); *United States v. Goldenberg,* 168 U.S. 95, 102–103 [18 S.Ct. 3, 4, 42 L.Ed. 394] (1897); *Oneale v. Thornton* [Thornton], 6 [Cranch 53, 68, 3 L.Ed. 150] (1810). When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete." *Rubin v. United States,* 449 U.S. 424, 430 [101 S.Ct. 698, 701, 66 L.Ed.2d 633] (1981); *see also Ron Pair Enterprises, supra,* at 241 [109 S.Ct. at 1030].

*Germain,* 503 U.S. at 253–54, 112 S.Ct. at 1149.

■■ Since the instant case involves no real property, the anti-modification provision of § 1322(b)(2) does not apply, and the plain language of § 1322(b)(2) permits modification of Greenpoint's rights, including valuation of its claim. Greenpoint's motion for relief from the stay is based upon Donna's default, but § 1322(b)(2) permits Donna to modify Greenpoint's rights and cure her default in her Plan. Thus, Greenpoint is not entitled to relief from the stay under 11 U.S.C. § 362(d)(1). Neither is Greenpoint entitled to relief under § 362(d)(2), because the record shows Donna lives in the mobile home with her 3 children. The Court finds that the mobile home is necessary to Donna's effective reorganization. § 362(d)(2)(B)

■ Turning to valuation, Donna testified that the value of her mobile home is $37,712 as listed in her Schedules and motion. Cossitt objected to Donna giving opinion testimony regarding the value of the mobile home. However, under Fed. R.Evid. 701 an owner is competent to give her opinion on the value of her property. *See, e.g. South Central Livestock Dealers, Inc. v. Security State Bank of Hedley, Tex.,* 614 F.2d 1056, 1061 (5th Cir.1980); *see also* Russell, BANKRUPTCY EVIDENCE MANUAL, 1999 Ed. § 701.2. No dispute exists that Donna owns her mobile home. Thus, She may give her opinion on its value. No other evidence exists in the record for a different value than $37,712. Greenpoint offered none.

The proper value for "cram down" under § 1325(a)(5)(B) is the "cost the debtor would incur to obtain a like asset for the same proposed use." *Associates Commercial Corp. v. Rash ("Rash"),* 520 U.S. 953, 965, 117 S.Ct. 1879, 1886, 138 L.Ed.2d 148 (1997). Donna testified that her value of $37,712 represents what she would incur to obtain a like used mobile home within which to live. The *Rash* standard is used synonymously with the Ninth Circuit's understanding of the term fair market value. *Rash,* 520 U.S. at 959, 117 S.Ct. at 1884 n. 2; *In re Taffi,* 96 F.3d 1190, 1191–92 (9th Cir.1996); *In re Miller,* 16 Mont. 179, 180 (Bankr.Mont.1997). Based upon Donna's testimony and the absence of any evidence showing any other value, the Court finds that the value of Greenpoint's security, a 1997 Moduline Woodridge 28x60 mobile home, is $37,712.

Donna's value is supported by Greenpoint's own Proof of Claim No. 6, in which Cossitt, on behalf of Greenpoint, states the approximate market value of the mobile home is $37,712.60. The Court must consider statements contained within the Proof of Claim as true. *Miller,* 16 Mont. B.R. at 180; *In re Arthun,* 15 Mont. B.R. 174, 175 (Bankr.Mont.1996); *Wright v. Holm,* 931 F.2d 620, 623 (9th Cir.1991). Therefore, Donna's motion for valuation will be granted.

IT IS ORDERED Greenpoint's objection to Donna's motion for valuation, filed April 13, 2000, is overruled; the Debtor's motion for valuation of security, filed April 3, 2000, is granted; and the valuation of Greenpoint Credit's security and allowed secured claim, a 1997 Moduline Woodridge 28 × 60 mobile home, are fixed at the sum of $37,712.

IT IS FURTHER ORDERED Greenpoint's motion for relief from automatic stay, filed April 13, 2000, is denied.