In re Clarence Gordon WITT, and Carolyn Sue Witt, Debtors.

UNITED COMPANIES LENDING CORP., Appellant,

v.

Clarence Gordon WITT, and Carolyn Sue Witt, Appellees.

No. 695–00597–WA1–13.
Civil Action No. 95–73–L.

United States District Court,
W.D. Virginia,
Lynchburg Division.

April 19, 1996.

Paul J. Feinman, Fralin, Feinman, Coates & Kinnier, P.C., Lynchburg, VA, for appellant.

Robert Mitchell Garbee, Wilson, Garbee & Rosenberger, Lynchburg, VA, for appellees.

## MEMORANDUM OPINION

TURK, District Judge.

This is an appeal by the United Companies Lending Corporation ("United"), from an Order of the United States Bankruptcy Court for the Western District of Virginia confirming the debtors' proposed bankruptcy plan over United's objections. This court has jurisdiction pursuant to 28 U.S.C. § 158. United raises two issues on appeal. First, it contends that the appellees have shown no cause to extend the period of repayment over five years. Second, United asserts that the lien it holds on the debtor's mobile home cannot be bifurcated and stripped down in the manner proposed by the debtor's plan. The Witts maintain that their near destitute financial situation provided more than just cause for extending their debt payment period over a five year interval. They also claim that 11 U.S.C. § 1322(c)(2) (1994) allows the Bankruptcy Court to bifurcate United's lien into secured and unsecured portions and requires them only to completely satisfy the lien on the secured portion of their note. The court finds that the Bankruptcy Court's Order must be reversed on the strip down issue and the case remanded for findings of fact which would justify extending the plan's life beyond three years and for the confirmation of a plan in keeping with this Opinion.

### I.

The facts of the case are essentially undisputed. The debtors, Clarence Gordon Witt and Carolyn Sue Witt, presented this, their fifth bankruptcy petition on April 13, 1995.[1] Their principal outstanding obligation is the $22,561.02 due to United on a note which was executed on September 15, 1989 and matures on October 1, 1999. Other debts include a secured claim of $600, priority claims totaling $663.70, and unsecured claims totaling $1,832.48. Although the appellees originally listed United's claim as only $14,063.22, they later withdrew their objection to the proof of claim filed by United. Accordingly, United's proof of claim of $22,561.02, became the allowed amount of its claim when the debtors withdrew their objection. See 11 U.S.C. § 502 (1994).

The Witts originally proposed a plan which would value United's secured claim at only $13,100 and proposed payment of that amount plus ten percent (10%) interest per annum over a sixty month period beginning July 1, 1995. United objected to confirmation because the plan had a five year period and stripped down its claim under § 506(a) into secured and unsecured portions and only called for the payment of the mobile home's fair market value as a secured claim. The Bankruptcy Court found approved the five year payout period proposal. It also held that recently enacted 11 U.S.C. § 1322(c)(2) overruled the Supreme Court decision, *Nobelman v. American Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), and allowed debtors to bifurcate undersecured interests on principal residences in the manner proposed by the Witts, save that the fair market value of the residence would be determined at a later date. United appealed both the plan period extension and the strip down rulings.

### II.

United appeals two rulings by the Bankruptcy Court: 1) confirmation of a plan in excess of three years pursuant to 11 U.S.C. § 1322(d), and 2) modification of its

---

1. The first petition within the last five years was a no asset Chapter 7 action filed in 1991. Then in February 1992, the Witts filed a Chapter 13 action which they voluntarily dismissed in September 1992. However, one month later they filed another Chapter 13 petition and the case was closed on September 29, 1994. Lastly,

Debtors filed an additional petition on September 29, 1994, the day their third case was closed. The Witts dismissed that petition on December 15, 1994 and re-filed on April 13, 1995 (the current action), in order to secure the benefit of the Bankruptcy Reform Act of 1994.

deed of trust on the debtor's mobile home pursuant to § 1322(c)(2). The issue of what constitutes a reasonable cause to extend a plan beyond three years under § 1322(d) is a question of fact that must be decided by bankruptcy courts on a case by case basis. *See Grundy Nat'l Bank v. Stiltner,* 58 B.R. 593 (W.D.Va.1986). In this case, the Bankruptcy Court made only an implicit ruling that cause existed to extend the plan beyond the generally allowable three year period and failed to state any findings of fact which justified the extension.[2] Determining what the findings of fact should be is appropriately left to the Bankruptcy Court, not to this tribunal on appeal.[3] Accordingly, the case must be remanded to the Bankruptcy Court on this issue so that a hearing on cause pursuant to § 1322(d) can be undertaken.

### III.

The other issue before the Bankruptcy Court was whether United's rights, as a holder of a claim secured by a note on real property which is the debtors' principal residence,[4] could be bifurcated in the Chapter 13 reorganization plan. Debtors contend that their mobile home is only worth $13,100, and they wish to pay that amount with full interest at ten percent (10%) per annum and seek to pay the remaining portion of their debt to United as an unsecured claim. Essentially, the Witts' position is that the addition of (c)(2) to section 1322 of the Bankruptcy Code in 1994 overturned the Supreme Court decision of *Nobelman v. American Sav. Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) in its entirety, thus permitting a bankruptcy judge to confirm a plan calling for a payment period extending beyond the date of the loan's maturation and to bifurcate the claim on the debtor's principal residence into secured and unsecured claims. With that accomplished, the Witts assert that they can reduce their secured mortgage debt to the fair market value of their mobile home. Modification of a secured creditor's deed of trust in the fashion sought involves pure questions of statutory interpretation and the court reviews such bankruptcy findings *de novo.* *In re Tudor Assoc., Ltd.,* 20 F.3d 115, 119 (4th Cir.1994).

Before the enactment of the Bankruptcy Reform Act of 1994,[5] debtors were generally allowed to modify the rights of holders of secured claims except for those which were secured by a security interest in real property that is the debtor's principal residence.

---

2.  Appellant makes much of the fact that without the payments on the deed of trust for the mobile home, their total debt amounts to only $2,496.18 and that the Witts should not need any more than twenty-nine months to pay off that debt at the rate of $86.66 per month. For their part, the debtors claim that they need to extend the loan period beyond the October 1, 1999, maturation date of United's note in order to keep a roof over their heads. *See In re Raikes,* 22 B.R. 837, 842 (Bankr.D.N.J.1982).

3.  Cause has been found by some courts to extend a plan beyond three years when a debtor has shown an inability to cure arrearages in any shorter time or by showing that the debtors are contributing all disposable income. *See e.g., In re Masterson,* 147 B.R. 295, 296 (Bankr.D.N.H. 1992). Further, the Bankruptcy Reform Act of 1994 apparently contemplated modifications of loan period payments, *see In re Lobue,* 189 B.R. 216, 219 (Bankr.S.D.Fla.1995); and was intended to permit a stretch out of mortgage loan payments in the exact same fashion proposed by the debtors. However, those are factors which should be taken into account on by the Bankruptcy Court on remand, not used by this court as some *ex post facto* justification for a ruling which has no factual support at this time.

4.  The question of whether or not a mobile home constitutes real property for the purposes of this subsection is apparently a question of state law. *See In re Blevins,* 152 B.R. 130 (Bankr.N.D.Tex. 1992). Neither party, nor the Bankruptcy Court itself ever raised the issue of how Virginia law treats mobile homes which are attached to real property. However, any question on that point seems to have been addressed by a 1994 amendment to the Virginia Tax Code. Mobile homes which are attached to real property are assessed in the same manner as other improvements and buildings which are similarly situated. **Va.Code** § 58.1–3521 (1994). Moreover, mobile homes which are permanently attached to real estate have enjoyed a long standing exemption from Virginia's personal property tax. **Va.Code** § 58.1–2403(6) (1950). Accordingly, the Witts' home, which is apparently attached to real estate, and included in the sale of such real estate, shall be treated throughout this Opinion as real property which is a principal residence under Virginia law.

5.  Pub.L. No. 103–394 (enacted on October 22, 1994, and effective in all cases commenced after the date of enactment).

11 U.S.C. § 1322(b)(2). Thus, a debtor was not permitted to modify the contract rights of a creditor in a Chapter 13 plan with respect to claims secured by a debtor's principal residence. *See Nobelman,* 508 U.S. at 330–31, 113 S.Ct. at 2111. In *Nobelman,* the Supreme Court held that a mortgage creditor's rights are reflected in the debt instrument and enforceable under state law. *Id.* at 328–29, 113 S.Ct. at 2110. Those rights, including re-payment of the principal and interest in specified monthly installments, are bargained for in the exchange between the mortgagor and mortgagee and stay with the real property until foreclosure, or the intervention of an applicable bankruptcy provision. *Id.; see Dewsnup v. Timm,* 502 U.S. 410, 417, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992). The unanimous Court then held that § 506(a) could not work to strip down a secured claim on real property used as a debtor's principal residence because of the exception carved out in § 1322(b)(2). *Nobelman,* 508 U.S. at 328–31, 113 S.Ct. at 2110–11. Justice Stevens concurred, specifically pointing out that the strange result of providing less favorable treatment to debtors on their residential mortgages than was given to other secured claims was intended to encourage capital flow into the home lending market. *Id.* at 330–32, 113 S.Ct. at 2111–12 (Stevens, J., concurring), *citing Grubbs v. Houston First Amer. Sav. Ass'n.,* 730 F.2d 236, 245–46 (5th Cir.1984).

The newly enacted § 1322(c)(2) of the Bankruptcy Code carved out an exception to the principal residence exception and the debtors assert that now they can do what was contemplated by the losing petitioners in *Nobelman.* Section § 1322(c)(2) states:

> Notwithstanding subsection (b)(2) and applicable non-bankruptcy law—in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

Accordingly, this court must decide whether the Witts' proposal imagines the sort of modification contemplated by Congress when it enacted § 1322(c)(2). Several courts have construed § 1322(c)(2) and all have concluded that it allows debtors to pay off their newly matured mortgages over the life of their Chapter 13 plan. *See In re Sarkese,* 189 B.R. 531, 534–35 (Bankr.M.D.Fla.1995); *In re Lobue,* 189 B.R. at 218; *In re Escue,* 184 B.R. 287, 292–93 (Bankr.M.D.Tenn.1995); *In re Chang,* 185 B.R. 50, 53 (Bankr.N.D.Ill. 1995); *In re Jones,* 188 B.R. 281, 281–82 (Bankr.D.Or.1995). Indeed, the legislative history of 11 U.S.C. § 1322(c)(2) states that the subsection was intended to overrule *First National Fidelity Corp. v. Perry,* 945 F.2d 61 (3d Cir.1991) in which the Third Circuit held that Chapter 13 did not allow a debtor to stretch out a past due mortgage debt and pay it over the life of the plan. *See* King, **Collier on Bankruptcy** ¶ 1322.14B at 1322–50 (15th ed. 1995).

However, this court is unaware of any case that has allowed an under secured mortgage to be entirely stripped down under § 1322(c)(2). Instead, the subsection has been interpreted as written, to allow modification of the payment period for certain home mortgages pursuant to § 1325(a)(5). That interpretation most closely approximates Congress' intention when it passed the Bankruptcy Reform Act of 1994, which was to assist debtors in retaining their homes through affordable extended plan payments. *See Jones,* 188 B.R. at 282. Moreover, as stated previously, that interpretation is entirely consistent with the statutory language itself. Section 1322(c)(2) says that *payment* of the claim may be modified pursuant to § 1325(a)(5), not that the entire claim could be modified according to § 506(a) as the Witts suggest.

Nevertheless, the Witts maintain that bifurcating and stripping down United's lien is permissible under § 1322(c)(2). In order to achieve their goal, the appellees would have to comply with § 1325(a)(5) which sets forth three possible alternatives for modification of an allowed secured claim:

> Except as provided in subsection (b), the court shall confirm a plan if—with respect

to each allowed secured claim provided for by the plan—

 (A) the holder of such claim has accepted the plan;

 (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

  (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

 (C) the debtor surrenders the property securing such claim to such holder.

Two of those possibilities are entirely inapplicable since they require that the claim holder accept the plan or that the debtor surrender the property. Thus, the only way that the Witts' mortgage could be modified is under subdivision (B), which requires that a creditor both retain its lien and not suffer any loss in value on the allowed amount. *See In re Lobue,* 189 B.R. at 218–19 ("cram down" under § 1325(a)(5)(B) requires both lien retention and insurance that all monies owed are paid over the plan's life). The lien retention requirement is intended to protect a creditor from loss occasioned by a later failure on the debtors' part to complete the plan. *In re Sarkese,* 189 B.R. at 536. Subdivision (B)(ii) adds more lien protection and requires that the value of the property distributed under the plan at least equals the amount of the allowed claim.

It is well settled that a claim becomes "allowed" pursuant to § 502, and once the proof of claim has been accepted the creditor must retain the full value of its lien. *Dewsnup v. Timm,* 502 U.S. at 417–20, 112 S.Ct. at 778–80 (though such an interpretation requires different meanings of "allowed secured claim" between § 506(a) and § 506(d), the overarching principle must be that Congress meant to stay with the pre-Code rule that liens pass through bankruptcy unaffected). Accordingly, the Witts' proposal does not fulfill the requirements of § 1325(a)(5)(B) because United's secured claim became allowed when its proof of claim was accepted as valid by the Bankruptcy Court. The Bankruptcy Court concluded however, that the allowed amount referred to that portion of the claim which was actually backed by the fair market value of the mobile home. When such an interpretation of § 506(a) has been proposed by debtors in the past, it has been consistently rejected when applied to home mortgage loans, even before *Nobelman. See id.*

The Bankruptcy Court took a contrary position and cited the cases of *In re Escue,* 184 B.R. 287 and *United Carolina Bank v. Hall,* 993 F.2d 1126 (4th Cir.1993) for support. In *Escue,* the Bankruptcy Court for the Middle District of Tennessee considered whether a debtor could modify a deed of trust debt and pay the amount due over the life of the plan. 184 B.R. 287. Within its discussion of 11 U.S.C. § 1322(c)(2) the Tennessee bankruptcy court stated:

> Because a Chapter 13 Plan may not extend beyond five years, section 1322(c)(2) will only cover short-term mortgages, long term mortgages on which the debtor has nearly completed payment, and mortgages with balloon payments. Section 1322(c)(2) also overrules that part of the United States Supreme Court's decision in *Nobelman v. American Savings Bank,* which dealt with these short term mortgages, balloon payment mortgages and long-term mortgages nearing the end of their payment term.

(citation omitted).

That dicta however has a much more limited application than the breadth of the rule which the Witts suggest this court adopt. In stating that *Nobelman* was overruled for the types of loans listed, the Tennessee bankruptcy court could only have meant that § 1322(c)(2) allows the bankruptcy plan to stretch out past-due amounts or soon due balloon payments, whereas *Nobelman* would not allow *any* modification to a principal home mortgage which had not been specifically waived by the Bankruptcy Code itself. 508 U.S. at 328–30, 113 S.Ct. at 2110 (emphasis added). The Supreme Court listed several rights that were "bargained for by the mortgagor and the mortgagee," and protected from modification by § 1322(b)(2). *Id.* Among them was the "right to re-payment of the principal in monthly installments over a fixed term at specified adjustable

rates of interest." *Id.* Thus, when a short term, balloon, or long term mortgage nearing completion is being scrutinized for possible payment period modification, the portion of *Nobelman* which requires fixed monthly payments to continue has been overturned by § 1322(c)(2), as discussed *supra.* Any other interpretation of the *Escue* dicta, especially one allowing total modification of an allowed secured home mortgage claim would constitute persuasive authority for this court to not only hold *Nobelman* overruled, but mandate throwing out the Court's interpretation of § 506(a) in *Dewsnup,* 502 U.S. at 416–20, 112 S.Ct. at 777–80, as well. Not even a liberal reading of 11 U.S.C. § 1322(c)(2)'s statutory language, nor its legislative history hints that the subsection was meant to have *that* sweeping a result and effectively eviscerate the pre-Code rule that liens pass through bankruptcy unaffected. *See Farrey v. Sanderfoot,* 500 U.S. 291, 297, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991) (liens and other secured interests ordinarily survive bankruptcy).

The Fourth Circuit decision in *United Carolina Bank v. Hall* is similarly unavailing. Though that decision dealt with a lien held by a bank on a mobile home, the loan was not treated as one on a principal residence pursuant to § 1322(b)(2). Judge Niemeyer pointed out that the decision to strip down the bank's lien in that case was dependent upon United Carolina Bank's knowledge of the axiom that, "the extension of consumer credit depends more on the borrower's capacity to pay debts out of the future income than on the value of the collateral provided, because *personal* property generally loses most of its resale value upon use." 993 F.2d at 1129 (emphasis added). Thus, in *Hall* the Fourth Circuit was applying the general rule under § 1322(b)(2), that a plan may modify the rights of holders of secured claims, and the question of different treatment for home mortgages was not at all in issue.

Moreover, the Witts' loan from United was not the sort of debt instrument contemplated by Congress when it passed § 1322(c)(2). That subsection is intended to provide some relief for home debtors subject to huge balloon payment mortgages and to protect home owners from foreclosure who had substantial equity invested in their residences. *See In re Jones,* 188 B.R. at 282. Although United holds a security interest on the Witt's principal residence, it is neither a short term nor a balloon mortgage, and the Witts do not have substantial equity invested in their mobile home. Additionally, a mobile home is a depreciating asset which is only categorized as real property by the grace of a Virginia law exception to personal property tax assessments. *See* **Va.Code** § 58.1–2403(6). Accordingly, if this court were to affirm the Bankruptcy Court's approval of the Witts' plan, it would allow many mobile home owners in Virginia to default on their notes, seek bankruptcy protection, and only pay off the fair market value of their collateral as a secured debt when their residences inevitably decreased in value. Creditors would have no bulwark against lien-stripping which other mortgage creditors possess through lien retention, because mobile home debts, like car loans, are almost always undersecured. Inevitably that would lead to damming the font of money flowing to finance mobile home mortgages and that is the opposite result from what Congress intended. *See Grubbs v. Houston First Amer. Sav. Ass'n.,* 730 F.2d at 245–46.

## IV.

For the foregoing reasons, the Bankruptcy Court's Order of September 7, 1995 must be vacated. Though the court is sympathetic to the Witts' plight, it cannot sanction the sort of modification approved by the bankruptcy court. Section 1322(c)(2) does not allow bankruptcy debtors to bifurcate and strip-down their undersecured and soon due mortgage notes, it only allows *payment* of the debt to be modified and stretched out over the plan's life. Accordingly, the court finds that the Order of the Bankruptcy Court denying Appellant's objections to confirmation must be **REVERSED** and the case **REMANDED** to the Bankruptcy Court so that a hearing on cause pursuant to § 1322(d) can be undertaken and a plan confirmed that is in keeping with this Opinion. An appropriate order will be entered this day.