

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-2000

# In Re: McDonald

Precedential or Non-Precedential:

Docket 99-1381

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"In Re: McDonald" (2000). *2000 Decisions.* Paper 47.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/47

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 9, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1381

IN RE: STEPHEN J. MCDONALD;
ROSEMARIE J. MCDONALD,

     Debtors

STEPHEN J. MCDONALD;
ROSEMARIE J. MCDONALD

v.

MASTER FINANCIAL, INC.

FREDERICK L. REIGLE, ESQ.,
STANDING CHAPTER 13 TRUSTEE;
FREDERIC J. BAKER, ESQ.,
ASSISTANT U.S. TRUSTEE,

     Trustees

Stephen J. McDonald;
Rosemarie J. McDonald,

     Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 99-cv-00149)
District Judge: Honorable James T. Giles

Argued December 6, 1999

Before: SLOVITER, ROTH and COWEN, Circuit Judges

(Filed: March 9, 2000)


     Dexter K. Case, Esq.
     Alisa R. Hobart, Esq. (Argued)
     541 Court Street
     Reading, PA 19601

     Counsel for Appellants

     Michael A. Tier, Esq. (Argued)
     215 Route 9

Bayville, NJ 08721

Joseph A. Diorio, Esq.
7979 Oxford Avenue, 2nd Floor
Philadelphia, PA 19111

Counsel for Appellee

OPINION OF THE COURT

COWEN, Circuit Judge.

In this appeal we must determine whether the so-called "antimodification provision" in 11 U.S.C.S1322(b)(2) applies to a second, wholly unsecured mortgage on a Chapter 13 debtor's home. In Nobelman v. American Savings Bank, 508 U.S. 324, 113 S.Ct. 2106 (1993), the Supreme Court held that a Chapter 13 debtor who had a single mortgage with an outstanding balance greater than the value of the debtor's residence could not divide the mortgage, pursuant to 11 U.S.C. S 506(a), into secured and unsecured parts and treat only the secured part as subject to the antimodification clause. According to Nobelman, the full outstanding balance of the mortgage is governed by the antimodification clause. Justice Thomas's opinion for the Court left unresolved, however, whether the antimodification clause applies to a second or junior mortgage if that mortgage is wholly unsecured by any remaining value in the residence.[1]

_____

1. Note that the phrase "wholly unsecured" in this context carries a specific meaning. While the mortgage holder of course initially obtained a security interest in the debtor's residence and in that sense has a secured claim, the second mortgage is now deemed wholly unsecured in

2

In interpreting Nobelman the Bankruptcy and District Courts both concluded that the second mortgage on the McDonalds' residence is subject to the antimodification clause, even if the value of their home is less than the outstanding balance of the first mortgage, leaving the second mortgage wholly unsecured. Because we conclude that this interpretation fails to take into account several strands of the Supreme Court's reasoning in Nobelman, we will reverse.

I

Before reaching when the antimodification clause applies, we must address a question about our jurisdiction. In the Bankruptcy Court the parties purportedly entered into a

stipulation of facts specifying that the outstanding balance of the first mortgage is greater than the value of the McDonalds' home. At oral argument before this court, however, Master Financial, the appellee and holder of the second mortgage on the McDonalds' home, asserted that their "stipulation" is not binding. On Master Financial's view if the Bankruptcy Court had held that the antimodification provision does not apply to wholly unsecured mortgages, then Master Financial would have contested whether the value of the home was indeed less than the outstanding balance of the first mortgage. Master Financial's interpretation of the "stipulation" apparently captured the Bankruptcy Court's understanding of the case, for that Court's opinion simply noted that Master Financial disputed the value of the home and stated that no evidentiary hearing had been held on the issue. Thus, as matters stand, we can only say that the McDonalds have alleged that the value of their home is $126,400, the balance of the first mortgage is $127,633.33, and the balance of the second is $46,846.42.

_____

the sense that the value of the debtor's residence is less than the amount due to a first or senior mortgage holder, leaving no remaining value for the second mortgage. Thus, at a foreclosure sale the holder of the wholly unsecured second mortgage would receive nothing from the direct proceeds of the sale.

3

In light of Master Financial's disavowal of any binding stipulation, we raised the issue of whether the bankruptcy court's decision amounted to an advisory opinion and consequently whether we have jurisdiction to hear this appeal. Federal courts are not authorized to issue advisory opinions. See, e.g., United States Nat'l Bank v. Independent Ins. Agents of America, Inc., 508 U.S. 439, 446, 113 S.Ct. 2173, 2178 (1993); Coffin v. Malvern Federal Savings Bank, 90 F.3d 851 (3d Cir. 1996).

The precise analytical contours of what constitutes an advisory opinion, however, are less than clear. For example, Fed.R.Civ.P. 12(b)(6) allows a court to resolve certain legal disputes in advance of factual disputes. Even though allowing discovery and conducting a hearing on the facts could have provided an alternative, and perhaps in some sense narrower, ground for resolving the suit, a court can still consider a legal issue that, if decided in the defendant's favor, would be dispositive on a motion to dismiss. Doing so conserves both the court's and the parties' resources. In keeping with this logic we appreciate that in the context of a Chapter 13 bankruptcy involving comparatively small sums of money, the parties understandably wanted to avoid

expenses, such as the cost of expert testimony, that would have been incurred contesting the value of the home if in the end the evidence produced would be legally irrelevant.

While the record is not entirely clear, we conclude that this case was decided on a motion to dismiss, notwithstanding the parties' odd references to a nonbinding stipulation of facts. The Bankruptcy Court's opinion accepted as true the McDonalds' allegations that the second mortgage was wholly unsecured and still held as a matter of law that the debtors must lose their adversary proceeding. Under these circumstances, it is clear that the Bankruptcy Court's interpretation of Nobelman conclusively resolved the litigation and did so without improperly issuing an advisory opinion.

Accordingly, we conclude that we are authorized to hear this appeal. We have jurisdiction pursuant to 28 U.S.C. S 158(d), and since we are presented with a purely legal issue, we exercise plenary review over the District Court's determination, a determination that in turn resulted from a

4

plenary review of the Bankruptcy Court's conclusions of law. See, e.g., In re Anes, 195 F.3d 177, 180 (3d Cir. 1999).

II

Our analysis of the merits of this appeal begins with two provisions of the bankruptcy code. The first, 11 U.S.C. S 506(a), applies to bankruptcies under all chapters, see 11 U.S.C. S 103(a), and sorts creditors' allowed claims against the debtor into secured and unsecured claims. Under S 506(a) any allowed claim that is secured by a lien on the debtor's property "is a secured claim to the extent of the value of [the] creditor's interest in the estate's interest in such property," and is deemed an unsecured claim to the extent it exceeds that value. An undersecured claim is thus treated as a secured claim only up to the value of the collateral; the excess debt becomes an unsecured claim.

The second relevant provision, the antimodification clause, applies only to Chapter 13 bankruptcies. The antimodification clause states that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence. . . ." 11 U.S.C. S 1322(b)(2). Put more directly, the antimodification clause bars a debtor from modifying the rights of a creditor who has a claim secured only by the debtor's principal residence.

Before Nobelman some courts had concluded that in a Chapter 13 bankruptcy they should look first toS 506(a) to determine both the value of a debtor's residence and how much of the mortgage remained secured. The courts would then treat only the portion deemed secured underS 506(a) as subject to the antimodification provision inS 1322(b)(2). See, e.g., In re Bellamy, 962 F.2d 176 (2d Cir. 1992); In re Hart, 923 F.2d 1410 (10th Cir. 1991); Wilson v. Commonwealth Mortgage Corp., 895 F.2d 123 (3d Cir. 1990); and In re Hougland, 886 F.2d 1182 (9th Cir. 1989). Other courts, by contrast, concluded that there was a conflict between S 506(a) and S 1322(b)(2) and decided that S 1322(b)(2) should prevail as the more specific provision. See, e.g., In re Nobleman, 968 F.2d 483 (5th Cir. 1992).

5

In reviewing the Fifth Circuit opinion, the Supreme Court agreed that S 1322(b)(2) applies to both the part of a mortgage that is currently secured by value in the residence and the part that is unsecured, but significantly the Court nevertheless rejected the Fifth Circuit's position that S 506(a) does not apply. Justice Thomas began his analysis by pointing out that it is "correct to look to S 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim," and doing so in Nobelman, he continued, showed that the mortgage holder, American Savings Bank, was "still the `holder' of a `secured claim,' because petitioner's home retains $23,500 of value as collateral." 508 U.S. at 329, 113 S.Ct. at 2110.

Once it was clear that American Savings was a holder of a claim secured by the debtor's principal residence, Justice Thomas reasoned that S 1322(b)(2) dictates that none of the bank's "rights" could be "modified" for its claim, even though part of the bank's claim was deemed unsecured under S 506(a). Finding that the term "rights" was not defined by the Bankruptcy Code, Justice Thomas invoked state law to determine the word's meaning and therefore concluded that, when the antimodification clause applies, it prevents the debtor's Chapter 13 plan from modifying the mortgage holder's state-law rights to repayment. What counts as impermissibly "modifying" a creditor's rights, however, should not be understood too broadly. Justice Thomas hastened to add that the mortgage holder's rights are still "affected" by the bankruptcy. The automatic stay, for example, still blocks the creditor's right to foreclose, and debtors can cure prepetition defaults on a home mortgage under S 1322(b)(5). See Nobelman, 508 U.S. at 330, 113 S.Ct. at 2110.

The McDonalds argue that because Nobelman stated that S 506(a) still applies and determines the"status" of a

creditor's claim, it follows that a wholly unsecured
mortgage is no longer a secured claim under the
Bankruptcy Code and hence is not subject to the
antimodification clause. Nobelman specifically said that the
bank was a holder of a secured claim "because the
petitioner's home retains $23,500 of value as collateral."
508 U.S. at 329, 113 S.Ct. at 2110. In the McDonalds' case

6

they allege that there is no value left in their home as
collateral for Master Financial's mortgage.

So far the only appellate panel to apply Nobelman to a
wholly unsecured mortgage has agreed with the McDonalds
that such a mortgage is not subject to the antimodification
clause. In re Lam, 211 B.R. 36 (9th Cir. BAP), appeal
dismissed, 192 F.3d 1309 (9th Cir. 1999). The many
bankruptcy courts to consider the issue have split, with a
majority favoring the McDonalds' view2  but some adopting
the opposing view.3 Bankruptcy treatises are also divided
on the issue. Compare 5 Collier on Bankruptcy,
S 1322.06[1][a]at 1322–16 ("If the creditor had held a lien
on property that had no value (perhaps because the
property was fully encumbered by prior liens), then under
this analysis it would not have been a "holder of a secured
_____

2. See, e.g., In re McCarron, 242 B.R. 479 (Bankr.W.D.Mo. 2000); In re
Johnson, 226 B.R. 364 (D.Md. 1998); In re Cerminaro, 220 B.R. 518
(Bankr.N.D.N.Y. 1998); In re Phillips, 224 B.R. 871 (Bankr.W.D.Mich.
1998); In re Reeves, 221 B.R.756 (Bankr.C.D.Ill. 1998); In re Smith, 215
B.R. 716 (Bankr.W.D.Tenn. 1998); In re Bivvins , 216 B.R. 622
(Bankr.E.D.Tenn. 1997); In re Scheuer, 213 B.R. 415 (Bankr.N.D.N.Y.
1997); In re Cervelli, 213 B.R. 900 (Bankr.D.N.J. 1997); In re Geyer, 203
B.R. 726 (Bankr.S.D.Cal. 1996); In re Sanders , 202 B.R. 986
(Bankr.D.Neb. 1996); In re Purdue, 187 B.R. 188 (S.D.Ohio 1995); Wright
v. Commercial Credit Corp., 178 B.R. 703 (E.D.Va. 1995); In re Thomas,
177 B.R. 750 (Bankr.S.D.Ga. 1995); In re Lee, 177 B.R. 715
(Bankr.N.D.Ala. 1995); In re Woodhouse, 172 B.R. 1 (Bankr.D.R.I. 1994);
In re Sette, 164 B.R. 453 (Bankr.E.D.N.Y. 1994); In re Castellanos, 178
B.R. 393 (Bankr.M.D.Pa. 1994); In re Mitchell , 177 B.R. 900
(Bankr.E.D.Mo. 1994); In re Hornes, 160 B.R. 709 (Bankr.D.Conn. 1993);
In re Plouffe, 157 B.R. 198 (Bankr.D.Conn. 1993); In re Lee, 161 B.R.
271 (Bankr.W.D.Okla. 1993); In re Moncrief, 163 B.R. 492
(Bankr.E.D.Ky. 1993); In re Kidd, 161 B.R. 769 (Bankr.E.D.N.C. 1993);
In re Williams, 161 B.R. 27 (Bankr. E.D.Ky. 1993).

3. See, e.g., In re Boehmer, 240 B.R. 837 (Bankr.E.D.Pa. 1999); In re
Tanner, 223 B.R. 379 (Bankr.M.D.Fla. 1998); In re Lewandowski, 219
B.R. 99 (Bankr.W.D.Pa. 1998); In re Bauler, 215 B.R. 628 (Bankr.D.N.M.
1997); In re Mattson, 210 B.R. 157 (Bankr.D.Minn. 1997); In re
Shandrew, 210 B.R. 829 (Bankr.E.D.Cal. 1997); In re Fraize, 208 B.R.

311 (Bankr.D.N.H. 1997); In re Barnes, 207 B.R. 588 (Bankr.N.D.Ill. 1997); In re Neverla, 194 B.R. 547 (Bankr.W.N.Y. 1996); In re Barnes, 199 B.R. 256 (Bankr.S.D.N.Y. 1996); In re Jones , 201 B.R. 371 (Bankr.D.N.J. 1996); In re Witt, 199 B.R. 890 (W.D.Va. 1996).

claim" entitled to protection by section 1322(b)(2).") with Keith M. Lundin, Chapter 13 Bankruptcy 2d ed., S 4.46 at 4-56 ("Although the concept of an "unsecured secured claim" is impossible under S 506(a), Justice Thomas's focus on the "rights" of the "holders" of a"claim secured only by . . ." in S 1322(b)(2) extends the protection from modification . . . without regard to the allowance or disallowance of secured claims under S 506(a).").

While we acknowledge that there is some ambiguity in the language in Nobelman, we believe that the better interpretation is that reached by Collier's, the Ninth Circuit bankruptcy panel in Lam, and the majority of bankruptcy courts to consider the issue. The Supreme Court did not adopt the Fifth Circuit's view that S 506(a) is inapplicable, and S 103(a) provides that S 506(a) does apply to a Chapter 13 bankruptcy. Once we accept that courts must apply S 506(a), then it follows, even under Nobelman, that a wholly unsecured mortgage holder does not have a secured claim. Justice Thomas specifically said that the bank in Nobelman had a secured claim "because" the bank's lien still attached to some existing value in the debtor's house. We do not think there is any meaningful sense in which a court could be said to apply S 506(a) if the sole function of the section was simply to adopt the state-law label of the claim as secured. Moreover, if the value of the collateral were irrelevant, then it is hard to see why Justice Thomas would instruct that the debtors "were correct in looking to S 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim." Nobelman, 508 U.S. at 328, 113 S.Ct. at 2110. Courts hardly need to perform a valuation of the collateral to adopt the original state-law label of the claim as secured.

The only reason there is any doubt about the result is Justice Thomas's discussion of the term "claim" occurring in the antimodification clause. When he rejected the approach of the courts holding that the antimodification clause applies only to the still secured part of a mortgage under S 506(a), Justice Thomas said that those courts had incorrectly relied on the rule of the last antecedent. To see how that rule applies, recall that S 1322(b)(2) states that a debtor's Chapter 13 plan can "modify the rights of holders

of secured claims, other than a claim secured only by a security interest in . . . the debtor's principal residence. . . ." Under the rule of the last antecedent, the clause "other than a claim secured only by a security interest in . . . the debtor's principal residence," modifies its immediate antecedent, "secured claims." With "secured claims" as the term modified, courts had reasoned before Nobelman that the antimodification clause must apply only to the part of a mortgage that remained a "secured claim." Justice Thomas agreed that this reading "is quite sensible as a matter of grammar," but concluded that the reading "is not compelled." Nobelman, 508 U.S. at 330, 113 S.Ct. at 2111.

He explained that the statute deliberately used the unmodified term "claim" in the antimodification clause, rather than the term "secured claim." Since "claim" receives a broad interpretation under the Bankruptcy Code, the term encompasses both the secured and unsecured portions of the mortgage, a conclusion showing that the antimodification clause applies to both parts of the mortgage.

This discussion of the term "claim" has created some confusion because earlier Justice Thomas emphasized that applying S 506(a) in the case before the Court showed that, since value remained in the collateral, the bank was "still the `holder' of a `secured claim.' " Id. at 329, 113 S.Ct. at 2110. If his subsequent discussion concluded that the antimodification clause, by using the unmodified term "claim," applied to both the unsecured and secured part of the mortgage, then why did he bother to establish earlier that the bank was still a holder of a secured claim? Doesn't the expansive reading of the term "claim" make it irrelevant whether the bank remains a holder of a secured claim?

We think the Supreme Court's discussion of #8E8E # 506(a) and 1322(b)(2) is consistent. Perhaps the clearest explanation of how the Court's discussion of the two sections can be reconciled is to point out that while the antimodification clause uses the term "claim" rather than "secured claim" and therefore applies to both the secured and unsecured part of a mortgage, the antimodification clause still states that the claim must be "secured only by a security interest in . . . the debtor's principal residence."

9

11 U.S.C. S 1322(b)(2) (emphasis added). If a mortgage holder's claim is wholly unsecured, then after the valuation that Justice Thomas said that debtors could seek under S 506(a), the bank is not in any respect a holder of a claim secured by the debtor's residence. The bank simply has an

unsecured claim and the antimodification clause does not apply. On the other hand, if any part of the bank's claim is secured, then, under Justice Thomas's interpretation of the term "claim," the entire claim, both secured and unsecured parts, cannot be modified. We think this reading reconciles the various parts of the Court's opinion.4

Master Financial insists that the Supreme Court's statement that S 506(a) still applies is dictum and should be ignored. We disagree. Chief Judge Posner has aptly defined dictum as "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding--that, being peripheral, may not have received the full and careful consideration of the court that uttered it." Sarnoff v. American Home Prods. Corp., 798 F.2d 1075, 1084 (7th Cir. 1986). Justice Thomas's statement that it is correct to apply S 506(a) is critical to Nobelman's holding, for if the petitioner's home had not retained some value as collateral, the Supreme Court's discussion of S 506(a) implies that the result would have been different. The Supreme Court's discussion is only dictum, in other words, if you assume Master Financial's reading of the case is correct at the outset.

The bare fact that the Supreme Court was not considering a wholly unsecured mortgage does not convert into dicta every piece of reasoning in Nobelman  bearing on

_____

4. Master Financial asserts in its brief that wholly unsecured mortgages are regularly bought and sold, and therefore a wholly unsecured mortgage has value and is still subject to the antimodification clause. Whatever value a wholly unsecured mortgage might have in the market Master Financial has in mind, that value has no bearing on the inquiry under S 506(a). Section 506(a) compares the value of the collateral against the "creditor's interest in the estate's interest in [the collateral]."
Master Financial's position would only make sense if the creditor was entitled to collect from the debtor not only the money owed on the debt but also the price that the mortgage might be sold to someone else.

that issue. A holding, as Sarnoff's definition makes clear, extends beyond a statement of who won or lost a case. A court can choose among different holdings that offer broader or narrower ways of resolving a dispute. It is also worth emphasizing that the Supreme Court's discussion of S 506(a) was not likely to have been an ill-considered remark since the Fifth Circuit opinion that the Supreme Court reviewed expressly rejected that S 506(a) applies. See In re Nobelman, 968 F.2d 489, 488 (5th Cir. 1992).

Furthermore, on Master Financial's interpretation the Supreme Court's discussion of S 506(a) is not dictum in the sense that it resolved a real legal issue, but one that could be readily deleted from the court's rationale for deciding the case; rather, Master Financial's view makes the Court's discussion of S 506(a) a useless aside that could not be relevant to any case involving the antimodification clause.

But even if the discussion of S 506(a) could be accurately characterized as dictum--and we think it cannot be--we should not idly ignore considered statements the Supreme Court makes in dicta. The Supreme Court uses dicta to help control and influence the many issues it cannot decide because of its limited docket. "Appellate courts that dismiss these expressions [in dicta] and strike off on their own increase the disparity among tribunals (for other judges are likely to follow the Supreme Court's marching orders) and frustrate the evenhanded administration of justice by giving litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there." United States v. Bloom, 149 F.3d 649, 653 (7th Cir. 1998).

We think the textual arguments about Nobelman by themselves require the result we reach today, but we also are unpersuaded by Master Financial's policy arguments that the Supreme Court reached the wrong result. Thefirst point to stress is that, as Justice Stevens noted in his concurrence, the antimodification clause's legislative history shows that the provision's "favorable treatment of residential mortgagees was intended to encourage theflow of capital into the home lending market." 508 U.S. at 332, 113 S.Ct. 2112. Because second mortgages are rarely used to purchase a home, making wholly unsecured second mortgages subject to the antimodification clause would

11

have at best a minimal impact in encouraging home building and buying. The holder of a second mortgage is apt to be very much like other general creditors, and therefore it seems reasonable that a wholly unsecured second mortgage will be subject to the same rules that apply to other secured claims--i.e., a claim not secured by any current value in the specified collateral is deemed an unsecured claim.

One often-cited concern that Master Financial invokes is that it would be unjust and arbitrary to allow a mortgage holder to have an unmodifiable claim when there is merely one dollar of value left in the residence, but leave a mortgage holder with a modifiable (and hence potentially valueless) claim if there is no remaining value in the residence. We will begin with the complaint that the result

is arbitrary and then turn to the objection that it is unjust.

Bright-line rules that use a seemingly arbitrary cut-off point are common in the law. A day beyond the statute of limitations and the plaintiff must lose, even if the claim was otherwise unquestionably a winning one. If the evidence is just over a preponderance, the plaintiff wins full damages; just under, the plaintiff gets nothing. In bankruptcy law a Chapter 7 trustee cannot contest the validity of a debtor's claimed exemption when the 30-day period for objecting has expired and the trustee failed to obtain an extension; and this is true even if the debtor has no colorable basis for claiming the exemption. Taylor v. Freeland & Kronz, 503 U.S. 638, 112 S.Ct. 1644 (1992). To take an example closer to our case, we have read the word "only" in the antimodification clause's phrase, "secured only by a security interest in . . . the debtor's principal residence," to mean that the clause's protection is unavailable when the loan is secured not just by the debtor's residence but by other property as well. See, e.g., Hammond v. Commonwealth Mortgage Co., 27 F.3d 52 (3d Cir. 1994); Wilson v. Commonwealth Mortgage Corp., 895 F.2d 123, 126-29 (3d Cir. 1990). What these examples show is that line drawing is often required in the law and, at the boundary, the appearance of unfairness is unavoidable. Simply pointing out that some arbitrariness occurs is not a compelling objection.

Master Financial believes that the law should always prevent the modification of a mortgage in a Chapter 13 bankruptcy and hence the law should not require a distinction between a wholly unsecured and a partially secured mortgage. This is essentially the argument that the result is unjust. As we have explained, there is no way to reconcile Master Financial's position with the reasoning in Justice Thomas's opinion. Even if we agreed with Master Financial's argument that the result is unjust, we would be bound. But in any event, holders of second mortgages are in a sense unintended beneficiaries of congressional intent to boost the home-buying and home-building markets. And to the extent there is any unfairness in the distinction between wholly unsecured mortgage holders and those secured only by a nominal value, the creditor with only a dollar's worth of security in the property cannot be heard to complain--such a creditor can invoke the antimodification clause. Any unfairness in that circumstance falls on the debtor. The only class of creditors who can complain are those who are wholly unsecured, but as we set forth above, these creditors are not worse off than other secured creditors who operate outside of mortgage lending.

We also note that our holding frequently will not make holders of wholly unsecured residential mortgages worse off than they would be under Master Financial's own rule making a wholly unsecured residential mortgage unmodifiable. This is true because a debtor who has outstanding balances on multiple mortgages exceeding the current value of the debtor's home often will not try to keep a home encumbered with so much debt, and instead will turn to a Chapter 7 bankruptcy and allow the home to be sold in liquidation. For example, consider that in our case Master Financial's reading of Nobelman would have the McDonalds pay, according to the McDonalds' statement of the facts, $174,479.75 to keep a home worth $126,400. A rational debtor might well decide to switch to Chapter 7, lose the home, and start over. Once the debtor proceeds under Chapter 7, a holder of a wholly unsecured mortgage will again, under S 506(a), be deemed unsecured and receive no more (and possibly less) money than that creditor would have under our interpretation of the antimodification clause. See 11 U.S.C.S 1325 (providing

requirements for a Chapter 13 plan's payment of unsecured creditors).

We also think it is significant that courts have repeatedly emphasized Congress's preference that individual debtors use Chapter 13 instead of Chapter 7. Part of the reason for this preference is that unsecured creditors often receive more money under successful Chapter 13 plans than they would under a Chapter 7 liquidation bankruptcy. To the extent Master Financial's rule would stampede more debtors into Chapter 7, Master Financial's strong interpretation of the antimodification clause would pursue the tenuous gains for holders of wholly unsecured mortgages by imposing losses on other unsecured creditors who will be worse off in Chapter 7 than they would have been in Chapter 13.

Master Financial responds that Chapter 7 will not offer a viable alternative for debtors because the Supreme Court has rejected lien-stripping in Chapter 7. See Dewsnup v. Timm, 502 U.S. 410, 112 S.Ct. 773 (1992). It is true that in Dewsnup the Supreme Court concluded that a debtor in Chapter 7 could not use S 506(d) to " `strip down' a creditor's lien on real property to the value of the collateral, as judicially determined, when that value is less than the amount of the claim secured by the lien." Id. at 412, 112 S.Ct. at 775. The Court reached this conclusion to prevent debtors from benefitting from any increase in the value of their home between the time its value was judicially determined (and hence the time part of the debt was

deemed unsecured) to the time of the later foreclosure sale. For example, before Dewsnup if the outstanding balance on the mortgage was $120,000, the house was judicially valued at $100,000, and the house's value later rose to $130,000 by the foreclosure sale, the debtor could strip down the lien to $100,000 and later take the $30,000 increase free of the creditor's claim to the $20,000. Because Dewsnup allowed the creditor in Chapter 7 to maintain a claim against the property for the unsecured balance, the decision prevented a Chapter 7 debtor from benefitting from an increase in the value of the home. But what matters for our purposes is that even under Dewsnup the debtor is still discharged of personal liability, so Dewsnup does not

14

eliminate the incentive to switch from Chapter 13 to 7 in order to escape debt on a home that far exceeds the home's value. A debtor in the McDonalds' position would still view Chapter 7 as a better alternative than Chapter 13.

It is also worth noting that courts are split on whether Dewsnup's rejection of lien-stripping in Chapter 7 applies to a wholly unsecured lien, although of course we express no view on that dispute. Compare In re Yi, 219 B.R. 394 (E.D.Va. 1998), and Howard v. National Westminister Bank, 184 B.R. 644 (Bankr.E.D.N.Y. 1995), with In re Laskin, 222 B.R. 872 (9th Cir. BAP 1998).

One last point should be mentioned. This appeal does not require us to decide what date a court should use to determine whether a mortgage is wholly unsecured. The parties appear to have assumed that the date the adversary proceeding was initiated should be used. There is no clear consensus in the caselaw. Compare In re McCarron , 242 B.R. 479, 482 (Bankr.W.D.Mo. 2000)(using the date the bankruptcy petition was filed) with In re Crain, 243 B.R. 75 (Bankr.C.D.Calif. 1999)(using the effective date of the Chapter 13 debtor's plan or ten days after the order confirming the plan if no timely appeal has been made). Section 506(a) states, "Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." Although we need not resolve the issue, we point out that whatever rule is adopted, it is desirable to avoid allowing an appeal to delay the date used for evaluation. Such a rule could encourage the losing party to bring an appeal in the hope of obtaining a more favorable evaluation.

For the foregoing reasons, we hold that a wholly unsecured mortgage is not subject to the antimodification

clause in S 1322(b)(2). The judgment of the District Court will be reversed. The case will be remanded to the District Court for it to remand the matter to the Bankruptcy Court for further proceedings consistent with this opinion. Costs taxed against appellee.

15

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

16